**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-00859-WJM-KLM

**AMERICAN TRADITION INSTITUTE**,
**AMERICAN TRADITION PARTNERSHIP**, and
**ROD LUECK**,

    Plaintiffs,

v.

**THE STATE OF COLORADO**;
**JOHN HICKENLOOPER**, individually, and in his official capacity as Governor of Colorado;
**BARBARA J. KELLEY**, individually, and in her official capacity as Executive Director of the Colorado Department of Regulatory Agencies;
**JOSHUA EPEL**, individually, and in his official capacity as a Chairman of the Colorado Public Utilities Commission;
**JAMES TARPEY**, individually, and in his official capacity as a Commissioner of the Colorado Public Utilities Commission;
**MATT BAKER**, individually, and in his official capacity as a Commissioner of the Colorado Public Utilities Commission; and
**DOUG DEAN**, individually, and in his official capacity as Director of the Colorado Public Utilities Commission,

    Defendants,

**ENVIRONMENT COLORADO**,
**COLORADO ENVIRONMENTAL COALITION**,
**SIERRA CLUB**, and
**THE WILDERNESS SOCIETY**,

    Proposed Defendant-Intervenors.

---

**ENVIRONMENT COLORADO ET AL. MOTION TO INTERVENE AND FOR LEAVE
TO FILE RULE 12(B) MOTION TO DISMISS**

---

**TABLE OF CONTENTS**

EXHIBIT INDEX ........................................................................................................................ ii
INTRODUCTION ........................................................................................................................ 1
BACKGROUND .......................................................................................................................... 2
    I.    THE COLORADO RENEWABLE ENERGY STANDARD ............................................ 2
    II.    THE CONSERVATION ORGANIZATIONS' HISTORY OF SUPPORT FOR THE COLORADO RENEWABLE ENERGY STANDARD ........................................................ 3
ARGUMENT ................................................................................................................................ 4
    I.    THE CONSERVATION ORGANIZATIONS ARE ENTITLED TO INTERVENE AS OF RIGHT. ........................................................................................................................ 4
        A.    The Motion to Intervene is Timely. .................................................................. 4
        B.    The Conservation Organizations Have an Interest in the Subject Matter of this Litigation. ............................................................................................................. 5
            1.    The Conservation Organizations Were Directly Involved in the Enactment of the Colorado RES. ................................................................................................... 5
            2.    The Conservation Organizations' Interests in Protecting the Environment and Reducing Air Pollution are Advanced by the RES. ............................................. 6
            3.    The Conservation Organizations Have an Interest in Reducing Greenhouse Gas Emissions That is Furthered by the Colorado RES. .......................................... 8
            4.    The Conservation Organizations' Members Plan to Participate in the Solar Rebate Program of the Colorado RES. ........................................................................... 9
        C.    The Conservation Organizations' Interests May Be Impaired as a Result of this Litigation. ........................................................................................................... 10
        D.    The Conservation Organizations' Interests are Not Adequately Represented by the State Defendants. .................................................................................................. 11
    II.    ALTERNATIVELY, THIS COURT SHOULD GRANT THE CONSERVATION ORGANIZATIONS PERMISSIVE INTERVENTION. ........................................................ 14
CONCLUSION ........................................................................................................................... 15

**EXHIBIT INDEX**

Exhibit 1     Proposed Answer

Exhibit 2     Declaration of Pam Kiely, Environment Colorado

Exhibit 3     Declaration of Charles Montgomery, Colorado Environmental Coalition

Exhibit 4     Declaration of Becky English, Sierra Club

Exhibit 5     Declaration of Suzanne Jones, The Wilderness Society

Exhibit 6     Joel Warner, Dirty Energy, Boulder Weekly, Oct. 6, 2005

Exhibit 7     EPA, Air Pollutants, Excerpts

Exhibit 8     EPA, Facility Level Emissions Quick Report, Colorado 2010 Coal-Fired Power Plant Emissions

Exhibit 9     Clean Air Task Force, Death and Disease from Power Plants, Colorado Power Plants

Exhibit 10    Xcel Energy, 2010 Renewable Energy Standard Compliance Report (2011), Excerpts

Exhibit 11    Proposed Amendments to the Rules of the Colo. Pub. Util. Comm'n Relating to the Renewable Energy Standard, PUC Dkt. No. 08R-424E (Sept. 9, 2009), Excerpts

Exhibit 12    Application of Pub. Serv. Co. of Colo. For Approval of an Amendment to Its 2007 Colo. Resource Plan, PUC Dkt. No. 10A-377E, at ¶¶ 31-60 (May 9, 2011), Excerpts

Exhibit 13    Proposed Order

## INTRODUCTION

Plaintiffs in this case (collectively "ATI") seek to strike down Colorado's Renewable Energy Standard ("RES"), which mandates that a percentage of electricity generation by utilities come from renewable energy sources such as wind and solar. Colo. Rev. Stat. § 40-2-124.

Environment Colorado, the Colorado Environmental Coalition, the Sierra Club, and The Wilderness Society (collectively "the Conservation Organizations") move to intervene in order to defend the Colorado RES. These groups have worked for years to enact and strengthen the RES, and the law provides important air quality, public health, and other benefits to Conservation Organization members. As described below, the Conservation Organizations meet all the requirements to intervene of right in this case under Fed. R. Civ. P. 24(a). Alternatively, the Organizations move for permissive intervention under Fed. R. Civ. P. 24(b).

In addition, the Conservation Organizations seek leave of Court to file a Rule 12(b) motion to dismiss the Complaint instead of an Answer in this case. The Conservation Organizations request that if intervention is granted, the Court allow them fourteen days to file such a motion to dismiss.[1] A proposed Order is attached as Exhibit 13.

---

[1] Rule 24 requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). To ensure that the Motion to Intervene complies fully with this requirement, a proposed Answer is attached as Exhibit 1. See Fed. R. Civ. P. 7(a) (defining allowable "pleadings" to include an answer, but not a motion to dismiss). The Conservation Organizations request, however, that if intervention is granted, this Answer not be accepted for filing and the Court instead allow the submission of a motion to dismiss.

Counsel for the Conservation Organizations conferred with counsel for all parties in accordance with D.C.COLO.LCivR 7.1.A. ATI opposes this Motion to Intervene. The State Defendants take no position.

## BACKGROUND

### I. THE COLORADO RENEWABLE ENERGY STANDARD

Colorado was the first state to create a renewable energy standard by ballot initiative when the state's voters approved Amendment 37 in 2004. Amendment 37 mandated that by 2015, large Colorado utilities generate 10% of their electricity from renewable energy sources.

The Colorado RES has been amended multiple times by the Colorado legislature to strengthen its renewable energy requirements. In 2007, the Colorado RES was amended to require 20% renewables by 2020. See 2007 Colo. Legis. Serv. Ch. 60 (H.B. 07-1281) (West). The 2007 amendments also expanded the categories of utilities required to comply with the RES to include cooperative electric associations and certain municipally-owned utilities. Id. In 2010, the Colorado RES was amended again to further raise the bar for renewable energy—requiring 30% renewables by 2020 for investor-owned utilities and 10% renewables by 2020 for cooperative electric associations and municipally-owned utilities. See Colo. Rev. Stat. § 40-2-124 (1)(c)(I), (c)(V); 2010 Colo. Legis. Serv. Ch. 37 (H.B. 10-1001) (West).

The Colorado RES is among the nation's most ambitious state renewable energy standards. Twenty-nine states have adopted mandatory renewable energy standards, but only a handful match or exceed Colorado's mandate of 30% renewables by 2020.[2]

---

[2] See Pew Ctr. on Global Climate Change, Renewable Energy Portfolio Standards, http://www.pewclimate.org/what_s_being_done/in_the_states/rps.cfm (last visited June 13, 2011).

## II. THE CONSERVATION ORGANIZATIONS' HISTORY OF SUPPORT FOR THE COLORADO RENEWABLE ENERGY STANDARD

The Conservation Organizations seeking intervention are non-profit groups that share a mission of protecting clean air, clean water, and the natural environment. Declaration of Pam Kiely ("Kiely Decl.") ¶ 2, attached as Exh. 2 (Environment Colorado); Declaration of Charles Montgomery ("Montgomery Decl.") ¶ 2, attached as Exh. 3 (Colorado Environmental Coalition); Declaration of Becky English ("English Decl.") ¶ 2, attached as Exh. 4 (Sierra Club); Declaration of Suzanne Jones ("Jones Decl.") ¶ 1, attached as Exh. 5 (The Wilderness Society).

These organizations have worked for years to enact and strengthen Colorado's RES, from the initial passage of Amendment 37 in 2004 through the most recent amendments in 2010. The Conservation Organizations led the effort to pass Amendment 37 in 2004. Kiely Decl. ¶ 4; Montgomery Decl. ¶ 4; English Decl. ¶ 3; Jones Decl. ¶ 2. They educated the public on the benefits of the Colorado RES, organized phone banks and mailings, contributed funding to the ballot initiative campaign, and dedicated numerous hours of staff and volunteer time to ensure passage of Amendment 37. Kiely Decl. ¶ 4; Montgomery Decl. ¶ 4; English Decl. ¶ 3; Jones Decl. ¶ 2. In fact, news reports characterized the passage of Amendment 37 as "a classic David vs. Goliath story, the scrappy environmentalists against the monolithic electricity companies."[3]

In the years following passage of Amendment 37, the Conservation Organizations mounted additional media and outreach campaigns, and met with elected officials and community leaders, to improve the Colorado RES's renewable requirements. Kiely Decl. ¶ 5; Montgomery Decl. ¶ 4. These efforts led to the 2007 amendments strengthening the Colorado RES. Kiely Decl. ¶ 5; Montgomery Decl. ¶ 4.

---

[3] Joel Warner, <u>Dirty Energy</u>, Boulder Weekly, Oct. 6, 2005, attached as Exh. 6.

After 2007, with Colorado's largest utility (Xcel Energy) meeting the RES goals ahead of schedule, the Conservation Organizations continued their efforts to strengthen the statute. Kiely Decl. ¶¶ 1, 6; Montgomery Decl. ¶ 4; English Decl. ¶ 4; Jones Decl. ¶ 2. The Conservation Organizations worked with Xcel, the Governor's office, and other stakeholders to craft the 2010 amendments to the RES, while again mobilizing public support and advocating for them in the legislature. Kiely Decl. ¶ 6; Montgomery Decl. ¶ 4, English Decl. ¶ 4; Jones Decl. ¶ 2. These efforts paid off when the Colorado legislature strengthened the Colorado RES again in 2010.

**ARGUMENT**

**I.    THE CONSERVATION ORGANIZATIONS ARE ENTITLED TO INTERVENE AS OF RIGHT.**

A movant is entitled to intervene as of right under Rule 24(a) if (1) the motion to intervene is timely; (2) the movant claims an interest in the property or transaction that is the subject of the action; (3) the movant's interest may "as a practical matter" be impaired or impeded by the litigation; and (4) the movant's interest is not adequately represented by existing parties. See, e.g., WildEarth Guardians v. Nat'l Park Serv., 604 F.3d 1192, 1196–98 (10th Cir. 2010). The Tenth Circuit follows a "somewhat liberal line in allowing intervention." Id. at 1198 (quoting WildEarth Guardians v. U.S. Forest Serv., 573 F.3d 992, 995 (10th Cir. 2009)).

The Conservation Organizations satisfy each of the Rule 24(a) requirements and are entitled to intervene in this action as of right.

**A.    The Motion to Intervene is Timely.**

The Rule 24(a) "timeliness" requirement focuses on any prejudice to existing parties resulting from the passage of time between the initiation of the litigation and the motion to intervene. See, e.g., Utah Ass'n of Cntys. v. Clinton, 255 F.3d 1246, 1250–51 (10th Cir. 2001).

4

Here, ATI filed its complaint on April 4, 2011. The State Defendants have not yet filed an answer, the initial scheduling conference has not yet occurred, and this Court has issued no substantive orders or rulings. The Conservation Organizations' intervention at this early stage would not prejudice any existing party and it is clearly timely. Compare id. (intervention motion filed three years after complaint was timely when other parties not significantly prejudiced).

### B. The Conservation Organizations Have an Interest in the Subject Matter of this Litigation.

The second requirement of Rule 24(a) is that an intervenor have an interest related to the property or transaction in dispute. Nat'l Park Serv., 604 F.3d at 1198. There is no "rigid formula" or "mechanical rule" for determining whether an interest is sufficient to justify intervention. San Juan Cnty. v. United States, 503 F.3d 1163, 1199 (10th Cir. 2007) (en banc). Instead, courts must apply "practical judgment" to determine "whether the strength of the interest and the potential risk of injury to that interest justify intervention." Id. When litigation raises an issue of significant public interest—rather than solely private rights—"the requirements for intervention may be relaxed." Id. at 1201. The Conservation Organizations have at least four interests in the Colorado RES that meet the test for intervention as of right.

#### 1. The Conservation Organizations Were Directly Involved in the Enactment of the Colorado RES.

The Conservation Organizations have an interest in this litigation because they worked extensively to secure passage of Amendment 37 and the subsequent amendments strengthening the RES. See supra at 3–4. Courts have recognized that "[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." Idaho Farm Bureau Fed'n v. Babbitt, 58 F.3d 1392, 1397 (9th Cir. 1995); see also Coal. of

5

Ariz./N.M Cntys. for Stable Econ. Growth v. Dep't of Interior, 100 F.3d 837, 841 (10th Cir. 1996) (party with a "persistent record of advocacy for [the environmental] protection[s]" adopted by an agency that were subsequently challenged in court has a "direct and substantial interest" sufficient "for the purpose of intervention as of right").

The Conservation Organizations participated extensively in the passage of the Colorado RES in 2004 and subsequent amendments to the law. See supra at 3–4. Over the past decade the Conservation Organizations have repeatedly conducted media and outreach campaigns, met with public officials, educated the public, and committed significant resources to support the Colorado RES. Id. Given their extensive efforts on behalf of the Colorado RES, the Conservation Organizations have a sufficient interest in this litigation to intervene as of right. See, e.g., Coal. of Ariz./N.M Cntys., 100 F.3d at 841; Idaho Farm Bureau, 58 F.3d at 1397.

### 2. The Conservation Organizations' Interests in Protecting the Environment and Reducing Air Pollution are Advanced by the RES.

The Conservation Organizations also have an interest in the environmental benefits of the Colorado RES. The Tenth Circuit has stated that "it [is] 'indisputable' that a prospective intervenor's environmental concern is a legally protectable interest" for intervention purposes. Nat'l Park Serv., 604 F.3d at 1198 (quoting San Juan Cnty., 503 F.3d at 1199). Moving Colorado toward greater reliance on renewable energy serves environmental interests that are sufficient for intervention under Rule 24(a).

First, moving from fossil fuels to renewable energy reduces air pollution. Fossil fuel sources of electricity emit large quantities of air pollutants—including nitrogen oxides (NOx), sulfur dioxide ($SO_2$), particulate matter, and mercury—that cause a host of health problems,

6

including premature death, respiratory diseases, and heart disease.[4] In contrast, the wind, hydroelectric, and solar facilities that are Colorado's primary sources of renewable energy generally emit no air pollutants when they generate electricity. By reducing the percentage of electricity generated from coal-fired power plants and other fossil fuel sources, the RES reduces air pollution.

Reducing air pollution, and the related environmental benefits from the RES, are key priorities for the Conservation Organizations. Kiely Decl. ¶¶ 8–9, 11; Montgomery Decl. ¶¶ 2, 9; English Decl. ¶¶ 6–9; Jones Decl. ¶¶ 1, 5–6. A non-profit organization has a sufficient interest to intervene under Rule 24(a) when litigation challenges a central goal or interest of the organization. Nat'l Park Serv., 604 F.3d at 1200–01; Clinton, 255 F.3d at 1252. As a result, the Conservation Organizations are entitled to intervene as of right to protect this interest.

Moreover, the RES directly affects the members of the Conservation Organizations. By moving Colorado away from coal, the RES provides important health benefits associated with cleaner air. See Kiely Decl. ¶¶ 9–10; Montgomery Decl. ¶ 9; English Decl. ¶ 11; Jones Decl. ¶ 5.

The air quality improvements from the Colorado RES also yield aesthetic and recreational benefits for members of the Conservation Organizations. Many of the same air pollutants that impair public health also cause atmospheric haze that degrades the state's scenic vistas. Visibility impairment is a significant problem on public lands in Colorado and across the nation. See, e.g., 42 U.S.C. §§ 7491–7492 (visibility protection provisions of the Clean Air Act);

---

[4] See, e.g., Exh. 7 (EPA, Air Pollutants). For example, the twelve largest coal-fired power plants in Colorado cumulatively emitted over 52,000 tons of NOx and over 45,000 tons of $SO_2$ in 2010. See Exh. 8 (EPA, Emissions Reports). Air pollution from coal-fired power plants in Colorado has been estimated to cause 49 deaths and 79 heart attacks annually. See Exh. 9 (Clean Air Task Force Report).

7

40 C.F.R. § 51.308 (regional haze regulations). Members of the Conservation Organizations visit and enjoy Colorado's national parks and other public lands. The Colorado RES helps improve visibility at these areas by reducing air pollution. Kiely Decl. ¶ 11; Montgomery Decl. ¶ 10; English Decl. ¶ 8; Jones Decl. ¶ 5.

In addition to reducing air pollution, the RES also yields other benefits for Colorado's environment. Renewable energy saves water because it reduces Colorado's dependence on coal, which is a very water-intensive form of power generation. Kiely Decl. ¶ 10. By replacing coal and natural gas, renewable energy also can be expected over the longer term to limit the destructive impacts of fossil fuel production on the Colorado landscape. Kiely Decl. ¶11; Montgomery Decl. ¶ 10; English Decl. ¶ 11; Jones Decl. ¶ 6. Both water conservation and landscape protection benefit Conservation Group members who enjoy Colorado's forests, rivers, lakes, and natural ecosystems. Kiely Decl. ¶¶ 11–12; Montgomery Decl. ¶ 10; English Decl. ¶¶ 8–9; Jones Decl. ¶ 6. These environmental, health, aesthetic, and recreational interests of the Conservation Groups and their members are sufficient for intervention in this case.

### 3. The Conservation Organizations Have an Interest in Reducing Greenhouse Gas Emissions That is Furthered by the Colorado RES.

The Colorado RES also benefits the Conservation Organizations through its role in addressing climate change. In addition to reducing Colorado's contribution to global warming, the RES serves as a model for efforts elsewhere in the United States to address climate change.

Combating climate change has become integral to the Conservation Organizations' missions. The Conservation Organizations have advocated extensively for laws to control greenhouse gas emissions in Colorado and other states. Kiely Decl. ¶¶ 2–3, 8; Montgomery Decl. ¶¶ 4–7; English Decl. ¶¶ 2–6, Jones Decl. ¶¶ 1–3. The role of the Colorado RES in

8

furthering these organizational priorities provides a sufficient interest for intervention. See, e.g., Nat'l Park Serv., 604 F.3d at 1200–01; Clinton, 255 F.3d at 1252.

The RES advances the Conservation Organizations' interests in addressing climate change in two ways. First, the RES mandate to expand the use of renewable energy will reduce Colorado's greenhouse gas emissions. Coal-fired power plants in Colorado emitted nearly 40 million tons of carbon dioxide in 2010.[5] This is equivalent to the emissions of over 7 million passenger vehicles.[6] By contrast, the wind and solar sources used to meet the Colorado RES emit no greenhouse gases when they generate electricity.

More broadly, the RES helps advance nationwide efforts to control global warming. Colorado's RES serves as a model demonstrating what is possible with renewable energy, and encourages policymakers elsewhere in the United States to increase renewable energy generation. English Decl. ¶ 10. This broader influence bolsters the efforts of the Conservation Organizations to combat climate change.

### 4. The Conservation Organizations' Members Plan to Participate in the Solar Rebate Program of the Colorado RES.

Finally, the Conservation Organizations have a protectable economic interest in this case because many of their members participate, and plan to participate, in the RES's solar rebate program. See, e.g., Montgomery Decl. ¶ 11. The RES requires utilities to offer rebates to consumers who install solar electric generation at their homes or businesses. See Colo. Rev. Stat. § 40-2-124(1)(e). Xcel's rebate program has helped finance thousands of distributed solar

---

[5] See Exh. 8 (EPA, Emissions Reports).
[6] See http://www.epa.gov/cleanenergy/energy-resources/calculator.html (last visited June 13, 2011).

power systems in Colorado.[7]  Members of the Conservation Organizations who participate in the RES-mandated solar rebate program will suffer harm if the RES is struck down.  See, e.g., Montgomery Decl. ¶ 11.  This economic interest is "undoubtedly" sufficient to meet the "interest" requirement of Rule 24(a).  Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d 1111, 1115 (10th Cir. 2002).

### C. The Conservation Organizations' Interests May Be Impaired as a Result of this Litigation.

The third requirement under Rule 24(a) for intervention as of right is that the litigation "may, as a practical matter, impair or impede the movant's interest."  Nat'l Park Serv., 604 F.3d at 1198.  Meeting this "impairment" requirement presents only a "minimal burden" to prospective intervenors.  Id. at 1199.  A movant for intervention "must show only that impairment of its substantial legal interest is possible if intervention is denied."  Id. (emphases added).

This case undoubtedly threatens to impair the interests of the Conservation Organizations because ATI asks this Court to strike down the RES.  Am. Compl. ¶¶ 156–88 (Dkt # 12).  Litigation seeking to invalidate a statute clearly "may, as a practical matter, impair or impede the movant's interest" in the continued operation and validity of that statute.  See Nat'l Park Serv., 604 F.3d at 1198.

If the RES statute is struck down, the members of the Conservation Organizations will lose the environmental, health, recreational, and aesthetic benefits described above.  See supra at 6–9.  The RES requires utilities to make substantial investments in renewable resources, and if ATI prevails it is very likely that this investment will decline without the mandates of the RES.

---

[7] See Exh. 10 (Xcel Report on Solar Rebates).

Kiely Decl. ¶¶ 10–12; Montgomery Decl. ¶¶ 7, 9–10; English ¶¶ 7–8, 11. This step backwards will increase the impacts from fossil fuels and adversely affect Conservation Group members' health and enjoyment of Colorado's natural beauty. It also will likely impair the Conservation Organizations' efforts to combat global warming. This possibility of impairment is sufficient for intervention. See e.g., Nat'l Park Serv., 604 F.3d at 1201; Clinton, 255 F.3d at 1253–54.

Moreover, if the statute is declared unconstitutional, the Conservation Organizations' extensive efforts over the past decade to pass and strengthen the Colorado RES will be nullified. Kiely Decl. ¶¶ 4–6, 8; Montgomery Decl. ¶¶ 4–5; English Decl. ¶¶ 3–5; Jones Decl. ¶ 2. The Conservation Organizations would be forced to return to square one in advocating for a renewable energy standard in Colorado. Courts have recognized that such a setback is sufficient for intervention. Nat'l Park Serv., 604 F.3d at 1199.

Finally, the economic interests of Conservation Organizations' members in the solar rebate program of the Colorado RES may be impaired because ATI seeks to invalidate the solar rebate program. Am. Compl. ¶¶ 174–78 (Dkt # 12). This possible impairment of the Conservation Organizations' economic interests is sufficient for intervention. See, e.g., Utahns for Better Transp., 295 F.3d at 1116.

### D. The Conservation Organizations' Interests are Not Adequately Represented by the State Defendants.

The final requirement of Rule 24(a) for intervention as of right is that the movant's interests not be adequately represented by existing parties. This "inadequate representation" requirement also imposes a "minimal burden," particularly when parties seek to intervene in support of the government. See, e.g., Nat'l Park Serv., 604 F.3d at 1200. A prospective intervenor "must show only the possibility that representation may be inadequate." Id.

11

In most circumstances "the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor." Clinton, 255 F.3d at 1256. As a result, the Tenth Circuit "ha[s] repeatedly recognized that it is 'on its face impossible' for a government agency to carry the task of protecting the public's interests and the private interests of a prospective intervenor." Nat'l Park Serv., 604 F.3d at 1200 (quoting Utahns for Better Transp., 295 F.3d at 1117). "The burden of showing inadequacy of representation is satisfied," according to the court, "[w]here a government agency may be placed in the position of defending both public and private interests." Id.

The State cannot adequately represent the interests of the Conservation Organizations. The Conservation Organizations are focused on advancing the many environmental and public health benefits of the Colorado RES. See supra at 3–4, 6–9. By contrast, the State of Colorado represents a broad spectrum of views—including private economic and business interests—that may differ substantially from those of the Conservation Organizations. When defending the Colorado RES, the State Defendants will inevitably balance those diverse interests. It is foreseeable that the State's strategic litigation decisions will place a lower priority on the Conservation Organizations' environmental goals than on other economic or business interests.

For example, the Colorado Public Utilities Commission ("PUC"), which implements the Colorado RES, is required by statute to balance both economic and environmental interests. If the PUC "considers environmental effects when comparing the costs and benefits of potential utility resources," the agency must also "give due consideration" to effects "on the state's economy and employment, including but not limited to, the effect on the mining, electric, natural gas, energy efficiency, and renewable resource industries." Colo. Rev. Stat. § 40-3-111(1.5)(a).

12

Moreover, when considering whether to encourage renewable energy development, the PUC must account for "the utility's ability to recover its capital and operating costs." Id. § 40-3-111(1.5)(b). The PUC's web site further explains that it must "balance . . . the needs of Colorado customers" with "the needs of utility service providers to earn a reasonable profit and to sustain a reliable utility infrastructure throughout Colorado."[8]

The PUC's implementation of the RES illustrates this dynamic. In striking a balance between environmental and other interests, the PUC has in some cases rejected the positions taken by environmental groups. For example, in one matter the PUC adopted a cost calculation approach that it viewed as striking a "reasonable balance" between competing interests. In doing so, the PUC rejected environmentalists' arguments for greater stability in such calculations to support the maximum acquisition of renewable resources.[9] Similarly, in a recent energy supply planning docket the PUC removed a previous requirement for Xcel to contract for 30 to 45 megawatts of solar power, over the objections of an environmental organization.[10]

Moreover, the Conservation Organizations' interests in this litigation extends far beyond Colorado's borders, while the State Defendants' interests are necessarily limited to this state. The Conservation Organizations have a strong interest not just in defending the Colorado RES, but also in the precedential effect this constitutional challenge may have on the continued validity of renewable energy standards across the nation. See supra at 2 (28 other states have

---

[8] Colo. Pub. Utils. Comm'n, Oversight by the PUC, http://www.dora.state.co.us/puc/about/AboutOversight.htm (last visited June 13, 2011).
[9] Proposed Amendments to the Rules of the Colo. Pub. Utils. Comm'n Relating to the Renwable Energy Standard, PUC Dkt. No. 08R-424E, at ¶¶ 23-30 (Sept. 9, 2009), attached as Exh. 11.
[10] Application of Pub. Serv. Co. of Colo. for Approval of an Amendment to Its 2007 Colo. Resource Plan, PUC Dkt. No. 10A-377E, at ¶¶ 31–60 (May 9, 2011), attached as Exh. 12.

13

mandatory RESs); Kiely Decl. ¶¶ 2, 7; English Decl. ¶¶ 2, 6; Jones Decl. ¶¶ 1, 3. These nationwide concerns are not shared by the State Defendants.

In short, the Court cannot assume that the State Defendants' approach to defending the Colorado RES will adequately represent the Conservation Organizations "merely because both entities occupy the same posture in the litigation." Clinton, 255 F.3d at 1256. The State Defendants represent a much broader range of interests and it is "on its face impossible" for the State Defendants to adequately represent the Conservation Organizations. The Conservation Organizations have met the "minimal burden" of the "inadequate representation" requirement. See Nat'l Park Serv., 604 F.3d at 1200.

## II. ALTERNATIVELY, THIS COURT SHOULD GRANT THE CONSERVATION ORGANIZATIONS PERMISSIVE INTERVENTION.

In addition to qualifying for intervention as of right, the Conservation Organizations satisfy the requirements for permissive intervention under Rule 24(b). Permissive intervention is appropriate where an applicant demonstrates: (1) it has a claim or defense that shares a common question of law or fact with the main action; (2) the intervention will not cause undue delay or prejudice; and (3) the motion to intervene is timely. Fed. R. Civ. P. 24(b).

Here, the Conservation Organizations intend to assert claims and defenses in common with those at the center of this action: the question of whether the RES is constitutional. See Exh. 1 (proposed Answer). In addition, the Conservation Organizations plan to raise a number of additional defenses challenging ATI's ability to bring this case. See Exh. 1 at 28 (list of defenses); see also Kootenai Tribe of Idaho v. Veneman, 313 F.3d 1094, 1110–11 (9th Cir. 2002) (conservation groups met test for permissive intervention where they asserted defenses "directly responsive" to plaintiffs' complaint).

14

Moreover, this motion to intervene is timely and intervention will not cause undue delay or prejudice to the existing parties. See supra at 4–5. To the contrary, the Conservation Organizations may assist the Court in resolving this case by providing expertise on the climate, air, health, and environmental benefits of the Colorado RES. See Kootenai Tribe, 313 F.3d at 1111 (noting that "the presence of intervenors would assist the court"). Accordingly, even if the Court does not grant intervention as of right, permissive intervention is warranted here.

## CONCLUSION

For the foregoing reasons, the Court should grant the Conservation Organizations intervention as a matter of right under Rule 24(a). Alternatively, permissive intervention should be allowed under Rule 24(b).

In addition, the Conservation Organizations request that if intervention is granted, the Court allow them 14 days to file such a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b).

Respectfully submitted June 13, 2011,

           /s/ Michael S. Freeman
           Michael S. Freeman
           Michael A. Hiatt
           Earthjustice
           1400 Glenarm Place, Suite 300
           Denver, CO 80202
           (303) 623-9466
           mfreeman@earthjustice.org
           mhiatt@earthjustice.org

Victoria R. Mandell
Western Resource Advocates
2260 Baseline Rd, Suite 200
Boulder CO 80302
303-444-1188 x224
303-786-8054 (fax)
vmandell@westernresources.org

*Attorneys for Proposed Defendant-Intervenors Environment Colorado, Colorado Environmental Coalition, Sierra Club, and The Wilderness Society.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of June, 2011, I filed the foregoing Motion to Intervene and for Leave to File 12(B) Motion to Dismiss with the Court's electronic filing system, thereby generating service upon the following parties of record:

Jack S. Silver
Kent H. Holsinger
Laura L. Chartrand
Holsinger Law, LLC
104 Broadway
3rd Floor
Denver, CO  80203
jsilver@holsingerlaw.com
kent@holsingerlaw.com
lchartrand@holsingerlaw.com

Erin Alene Overturf
Kathleen L. Spalding
Colorado Attorney General's Office
1525 Sherman Street
Denver, CO  80203
erin.overturf@state.co.us
kit.spalding@state.co.us

William V. Allen
Colorado Attorney General's Office –
Department of Law
1525 Sherman Street
7th Floor
Denver, CO  80203
will.allen@state.co.us

/s/ Michael S. Freeman _____