# EXHIBIT 11

Decision No. C09-0990

**BEFORE THE PUBLIC UTILITIES COMMISSION OF THE STATE OF COLORADO**

DOCKET NO. 08R-424E

IN THE MATTER OF PROPOSED AMENDMENTS TO THE RULES OF THE COLORADO PUBLIC UTILITIES COMMISSION RELATING TO THE RENEWABLE ENERGY STANDARD.

**DECISION ON EXCEPTIONS AND ADOPTING RULES ASSOCIATED WITH THE NOTICES OF PROPOSED RULEMAKING ISSUED UNDER DECISION NOS. C08-1001 AND C09-0817**

Mailed Date: September 9, 2009
Adopted Date: September 2, 2009

**TABLE OF CONTENTS**

I.  STATEMENT ........................................................................................................................... 2
    A.  Introduction .................................................................................................................... 2
    B.  Exceptions to Decision No. R09-0413 ........................................................................... 3
    C.  Administrative Notice of Materials from Docket No. 08A-532E
        and Additional Hearing ................................................................................................... 4
    D.  Supplemental Notice of Proposed Rulemaking Related to SB09-051
        and Fourth Hearing ......................................................................................................... 5
II. RULE 3661  RETAIL RATE IMPACT ................................................................................. 7
    A.  Time Fence and Lock Down of Net Incremental Costs ................................................. 7
    B.  Time Span of Costs and Benefits ................................................................................. 13
    C.  Section 123 Resources ................................................................................................. 14
    D.  Alternative Calculation Method ................................................................................... 16
III. RULE 3658  STANDARD REBATE OFFER ..................................................................... 17
    A.  Standard Offer for SO-RECs ....................................................................................... 17
    B.  Commercial Leased Facilities ...................................................................................... 19
    C.  Apartments and Condominiums .................................................................................. 22
    D.  Governmental Entities ................................................................................................. 24

Submitted to Colorado PUC E-Filings System

    E.   Third-Party Owners and Operators ...........................................................................24
    F.   Other Changes—Rules 3651, 3655, 3652, and 3664 ...............................................25
IV. RULE 3665  SMALL GENERATION INTERCONNECTION PROCEDURES.................27
    A.   Utility External Disconnect Switches........................................................................27
    B.   Rural System Screens.................................................................................................28
    C.   Insurance....................................................................................................................30
    D.   Other Changes ...........................................................................................................32
V.  RULE 3654  RENEWABLE ENERGY STANDARD .........................................................34
    A.   REC Shelf Life ..........................................................................................................34
    B.   Other Changes ...........................................................................................................36
VI. RULE 3659  RENEWABLE ENERGY CREDITS ..............................................................37
VII. RULE 3655  RESOURCE ACQUISITION ..........................................................................38
    A.   Expedited Contract Review.......................................................................................38
    B.   Real Time Electronic Access to Data........................................................................39
    C.   Other Changes ...........................................................................................................40
VIII.    OTHER EXCEPTIONS—RULES 3652, 3656, 3657, 3660, AND 3662 .......................41
IX. ORDER....................................................................................................................................44

**I.   STATEMENT**

    **A.   Introduction**

    1.   The Commission initiated this proceeding on September 23, 2008 by issuing a Notice of Proposed Rulemaking (NOPR) regarding the Renewable Energy Standard (RES). By Decision No. C08-1001, we stated that the basis and purpose of the rulemaking proceeding would be to re-revaluate the applicability of our small generator interconnection procedures to cooperative electric utilities as required by House Bill (HB) 08-1160. We also sought to modify and clarify the complete body of our RES rules to address issues made evident by the Commission's experience with the RES to date.

**Before the Public Utilities Commission of the State of Colorado**

Decision No. C09-0990                                                                                                          DOCKET NO. 08R-424E

2.  The Commission's RES rules are set forth at 4 *Code of Colorado Regulations* (CCR) 723-3-3650 through 3665. The statutory authority for the proposed rules is found primarily in § 40-2-124, C.R.S.

3.  We assigned this proceeding to an Administrative Law Judge (ALJ) and scheduled two sets of hearings by Decision Nos. C08-1001 and C08-1159-I. The first set of hearings took place on December 8 and 9, 2008, and the second set of hearings took place on January 29 and 30, 2009.

4.  Numerous interested persons offered written comments into the record of this proceeding.[1] Many commenters offered oral comments in addition to their written comments at the two sets of hearings.

5.  ALJ Ken F. Kirkpatrick issued his Recommended Decision Adopting Rules on April 20, 2009 (Decision No. R09-0413 or Recommended Decision). The ALJ explains that the tenor of his decision is "one of fine-tuning the existing program" based on the conclusion that the qualifying retail utilities (QRUs) are doing a successful job of implementing the RES.

**B. Exceptions to Decision No. R09-0413**

6.  Several interested persons filed exceptions to Decision No. R09-0413 despite the absence of sweeping changes to the RES rules. Exceptions, responses to those exceptions, and comments were filed by: Public Service Company of Colorado (Public Service); Black Hills/Colorado Electric Utility Company, LP, doing business as Black Hills Energy (Black Hills);

---

[1] A complete list of commenters is included in Decision No. R09-0413 issued on April 20, 2009.

3

**Before the Public Utilities Commission of the State of Colorado**

Decision No. C09-0990                                                                                                                    DOCKET NO. 08R-424E

costs for the entire life of a contract or for the entire useful life of an eligible energy resource. For larger resources, the lock down would be established at the time that the resource is acquired, presumably when the Commission approved the energy supply contract or issued a CPCN for the new resource. For on-site solar installations and other small resources, the lock down would be part of a RES compliance plan proceeding.

22. Because the ALJ's proposed approach for locking down on-going annual net incremental costs did not go as far as Public Service's proposal, Public Service proposes in its exceptions a "safety net" provision to append to subparagraph 3661(h)(IV). The purpose of this clause is to ensure that the investor owned QRU would be entitled to full cost recovery for eligible energy resources already built or under contract, even if a subsequent recalculation of the incremental costs of these resources depleted the RESA account to the point where the two percent cap on the retail rate impact may be exceeded. Public Service notes that Staff of the Colorado Public Utilities Commission (Staff) agreed with this concept in Docket No. 08A-532E. In its response to Public Service's exceptions, however, OCC disagrees with the incorporation of the safety net clause, arguing that it would violate the retail rate impact. OCC prefers the full lock down of costs as pursued by Public Service in Docket No. 08A-532E that would not require a safety net.

23. WRA strongly opposes the approach to locking down net incremental costs in the ALJ's Recommended Decision. WRA complains that ALJ's method will be a moving target, hampering the investor owned QRU's ability to plan within its RESA budget and therefore preventing the development of renewable resources to the maximum practicable extent as required by statute. WRA also complains that a re-computation of on-going annual net incremental costs in the future would be "a nightmare" and that it would be unfair to renewable

**Before the Public Utilities Commission of the State of Colorado**

Decision No. C09-0990                                                                                                                   DOCKET NO. 08R-424E

resources to subject them to hindsight in developing No RES plans under paragraph 3661(h). WRA proposes rule changes in its exceptions that essentially locks down the No RES plan for use in the future.

24. Public Service explains in its response to WRA's exceptions that it supports WRA's arguments generally but disagrees with the specific mechanics of WRA's proposed rule changes for locking down the No RES plan. Public Service puts forward its own proposed rule changes that correspond to its position in Docket No. 08A-532E.

25. Public Service further reiterates its basic position on the lock down of on-going annual net incremental costs in supplemental comments filed in response to Decision No. C09-0557.[4] CoSEIA expresses support for Public Service's proposal for the "lock down" in its supplemental comments.

26. In Docket No. 08A-532E, Staff strongly opposed Public Service's proposed approach for locking down annual on-going net incremental costs. Staff argued that § 40-2-124(1)(g)(I), C.R.S., requires Public Service not only to plan that it can stay within the retail rate impact when acquiring new renewable resources but to actually stay within the limit over time. Staff expressed concerns that a "lock down" could mask the actual costs of renewable resources, because prevailing net incremental costs may deviate from the locked down values.

27. Staff developed in Docket No. 08A-532E a counter proposal to Public Service's "lock down." Staff's alternative approach would entail a recalculation of the RES and No RES plans after each compliance year, in which the projected costs of fuel and carbon would be replaced with actual costs. The results of this analysis would then be used to determine the

---

[4] Public Service expresses a preference for locking down net incremental costs in terms of "dollars per megawatt hour" so that future calculations of net incremental costs that are charged against the RESA are calibrated with the actual production of the associated eligible energy resources.

incremental costs to be assessed to the RESA. Staff's approach would also entail the updating of the investor owned QRU's projections of the net incremental costs of all eligible resources acquired after the time fence in order to re-estimate the QRU's RESA budget for additional acquisitions of eligible energy resources in the future.

28. According to Staff, the investor owned QRU should be kept "whole, regardless of changes in the price of fuel or CO2 costs." However, the investor owned QRU "may need to adjust plans going forward to assure that rate payers never pay in excess of the 2 percent more than they would have paid for conventional generation." Staff further suggested in Docket No. 08A-532E that, if the Commission were inclined to adopt Public Service's proposal to lock down on-going annual incremental costs under paragraph 3661(h), we should require Public Service to report on the recalculated results of the RES and No RES plan comparison after each compliance year in order to address potential deviations between projected and actual rate impacts in the future.

29. We agree with the general notion supported by the many of commenters in this proceeding and in Docket No. 08A-532E that the retail rate impact serves primarily as a guide for prospective acquisitions of eligible energy resources. We disagree with Staff that a retrospective look at the RES versus No RES calculations is required to ensure an investor owned QRU's compliance with the retail rate impact.

30. We find that the ALJ's proposed process for locking down certain annual on-going net incremental costs strikes a reasonable balance between the frequent updates in net incremental costs as supported by Staff and the long-term lock down of costs advocated by Public Service and WRA. We modify the ALJ's proposed process, however, by eliminating indefinite nature of the lock down and by establishing a five-year period for "lock downs" for all

eligible energy resources. By eliminating the ALJ's proposed call for the Commission to determine lock downs on a case-by-case basis, we establish a uniform and replicable approach for addressing on-going annual net incremental costs in the investor owned QRU's RES compliance plan proceedings. The five-year term to the locked down amounts would also allow for regular updates to the available budgets for the acquisition of additional eligible energy resources based on more current projections of fuel, carbon, and other costs that serve as inputs to the determination of annual on-going net incremental costs. With this change, we find it unnecessary to adopt Staff's recommendation that the investor owned QRU report annually on the results of a recalculated RES plan versus No RES plan for a recently completed RES compliance year based on fuel or carbon costs actually incurred.

31.  We note that paragraph 3661(h), as modified by Decision No. R09-0413, offers a high degree of flexibility to the investor owned QRUs in developing methods for comparing the costs and benefits of the RES plan with the costs and benefits of the No RES plan. It is therefore up to the investor owned QRUs to propose in future annual RES compliance plans how they intended to update annual on-going net incremental costs after the "lock down" expires every five years.

32.  As a result of our finding in support of the ALJ's basic approach for locking down annual on-going net incremental costs of eligible resources, we recognize the possibility that circumstances may change such that already acquired eligible energy resources may cause the retail rate impact calculation over the ten year RES planning period to appear to be out of line with the cap in § 40-2-124, C.R.S. We therefore accept Public Service's proposed "safety net" addition to subparagraph 3661(h)(IV). With respect to OCC's concerns about potential violations of the retail rate cap at a given point in time in the future, we again stress our finding

Before the Public Utilities Commission of the State of Colorado
Decision No. C09-0990                                                                                             DOCKET NO. 08R-424E


that the retail rate impact is primarily intended to guide future acquisitions. It would be contrary to the intent of §§ 40-2-123 and 40-2-124, C.R.S., that the retail rate impact cause the unwinding of existing contracts or the abandonment of existing eligible energy resources in the event that the relative costs of the RES plan to the No RES plan change dramatically (and likely only temporarily) from the expectations at the time of resource acquisition.

### B.     Time Span of Costs and Benefits

33.     The ALJ modifies paragraph 3661(f) to define a ten-year "RES planning period" for the application of the calculation of the retail rate impact under paragraph 3661(h). As explained in paragraphs 126 through 144 of the Recommended Decision, the ALJ also simplifies the language describing the RES plan and No RES plan analysis in paragraph 3661(h). The ALJ notes that, while the savings from the redispatching of existing non-eligible resources in the presence of new eligible energy resources has been cited as a reason why an investor owned QRU may elect to use sophisticated system portfolio modeling in calculating the retail rate impact, his simplifications to paragraph 3661(h) are not intended to prevent such savings from factoring into the determination of the cost and benefits of the RES and No RES plans.

34.     Public Service suggests in its exceptions that a reference to the ten-year RES planning period should be added to subparagraph 3661(h)(IV) in light of the modification the ALJ made to the retail rate impact calculation in paragraph 3661(f). We agree with this change, because it will allow the Commission to monitor the "banking" of RESA funds associated for the procurement of additional eligible energy resources in future years beyond the upcoming RES compliance year.

35.     Public Service also suggests in its exceptions that we further modify subparagraph 3661(h)(II) to acknowledge the ALJ's support for the incorporation of the savings from existing