IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00859-WJM-KLM

AMERICAN TRADITION INSTITUTE,
AMERICAN TRADITION PARTNERSHIP, and
RON LUECK,

Plaintiffs,

v.

THE STATE OF COLORADO;
JOHN HICKENLOOPER, individually and in his official capacity as Governor of
Colorado;
BARBARA J. KELLEY, individually and in her official capacity as the Executive
Director of the Colorado Department of Regulatory Agencies;
JOSHUA EPEL, individually and in his official capacity as Chairman of the
Colorado Public Utilities Commission;
JAMES TARPEY, individually and in his official capacity as a Commissioner of the
Colorado Public Utilities Commission;
MATT BAKER, individually and in his official capacity as a Commissioner of the
Colorado Public Utilities Commission;
DOUG DEAN, individually and in his official capacity as Director of the Colorado
Public Utilities Commission,

Defendants.

---

## DEFENDANTS' MOTION TO DISMISS

---

Defendants (collectively, "the State" or "Colorado"), through the Colorado Attorney

General, respectfully file this Motion to Dismiss Plaintiffs' Amended Complaint pursuant to

Fed.R.Civ.P. 12(b)(1) and (6).  In support thereof, the State pleads as follows.

1

## INTRODUCTION

Plaintiffs' Amended Complaint ("Complaint") challenges parts of Colorado's Renewable Energy Standard law ("RES"), codified at C.R.S. § 40-2-124 (2010).  Colorado's Public Utilities Commission ("PUC") promulgated implementing rules at 4 Colo. Code Regs. § 723-3-3650, *et seq*.

The RES was adopted by Colorado voters in 2004 as Amendment 37.  The Amendment's Legislative declaration stated that developing new energy resources was critical and that Colorado's existing renewable energy resources were underutilized.  *See* § 40-2-124, comment at end regarding Amendment 37, Legislative Declaration.  The RES required additional utilization of renewable resources in Colorado to "save consumers and businesses money, attract new businesses and jobs, promote development of rural economies, minimize water use for electricity generation, diversify Colorado's energy resources, reduce the impact of volatile fuel prices, and improve the natural environment of the state."  *Id.*

Minimum Generation from Eligible Resources: The RES applies to qualifying retail utilities[1] ("QRUs").  In Colorado, Public Service Company of Colorado and Black Hills Energy Corporation are the only investor-owned QRUs.  The RES requires QRUs to "generate or cause to be generated" minimum amounts of electricity from eligible recycled or renewable sources.  § 40-2-124(1)(c)(I).  For example, by 2015, each investor-owned QRU is required to obtain 20 percent of its retail electricity sales in Colorado from eligible renewable or recycled energy.[2]

---

[1] Qualifying Retail Utilities ("QRU") are defined at § 40-2-124(1) as "each provider of retail electric service in the state of Colorado, other than municipally owned utilities that serve forty thousand customers or fewer."

[2] The two subcategories of Eligible Energy Resources are: (1) Recycled Energy, which can come from fossil fuel sources, and is produced by a generation unit "that converts the otherwise lost energy from the heat from exhaust stacks or pipes to electricity" but "that does not combust

§ 40-2-124(1)(c)(I)(D).  Of that twenty percent, 1.34 percent of the QRU's retail electricity sales must come from "distributed generation" by 2015.  *Id.*  Retail Distributed Generation is typically from solar energy created on the customer's side of the utility meter.[3]

Renewable Energy Credits:  The PUC requires QRUs to utilize a system of tradable renewable energy credits ("RECs") to comply with the RES.  § 40-2-124(1)(d).  One REC is created by each megawatt-hour of electric energy generated from an eligible energy resource.  4 Code Colo. Regs. 723-3-3652(n).  QRUs are permitted to buy and sell RECs.  § 40-2-124(1)(d).  The RECS for certain categories of eligible energy resources have a higher compliance value for purposes of satisfying the minimum in the RES.  *See* § 40-2-124(1)(c)(III), (VI), and (IX).

## THE PARTIES AND PLAINTIFFS' COMPLAINT

Plaintiffs are:  (1) an individual energy user in Colorado (Lueck); (2) a lobbying group opposed to "environmental extremism" (American Tradition Institute); (3) and an association, claiming to include Lueck (American Tradition Partnership).  Complaint, ¶¶ 1, 2, 3.  Plaintiffs claim that Colorado's RES violates the Commerce Clause of the U.S. Constitution in various ways, but essentially argue that the RES impermissibly burdens commerce by discriminating in favor of renewable energy sources and against "lower cost, cleaner, and more reliable" non-renewable fossil fuel sources by creating renewable energy set-asides for which non-renewable energy sources may not compete.  *Id.*, ¶¶ 157-59, 164-65.  Plaintiffs challenge the creation of tradable RECs because the market discriminates against out-of-state REC trading systems.  *Id.*,

_____

additional fossil fuel."  § 40-2-124(1)(a)(III).  The second is Renewable Energy Resources, which can include solar, wind geothermal, biomass and some hydro.  § 40-2-124(1)(a)(IV).
[3] Distributed Generation is a renewable resource located "on the customer's side of the utility meter," meaning it is installed at the customer's residence or business.  Retail Distributed Generation is typically "small solar" and may provide no more than 120% of the customer's average annual consumption of electricity.  § 40-2-124(1)(a)(V).

¶¶ 170-71.  Plaintiffs challenge the RES' required rebate program, and claim the RES impermissibly burdens interstate commerce by allowing the PUC to provide financial incentives to utilities to invest in renewable energy resources.  *Id.*, ¶¶ 175, 180.   Finally, Plaintiffs claim the RES impermissibly burdens commerce by limiting customers' rate increases to 2% per year. *Id.*, ¶ 185.

Plaintiffs seek damages, injunctive relief, and declaratory relief.  *Id.*, ¶¶ 160, 162, 166, 168, 171, 173, 176, 178, 181, 186, 190.  Plaintiffs name as Defendants the State of Colorado, Governor John Hickenlooper, Commissioners and the Director of the PUC, and Barbara Kelley, the Executive Director of the Colorado Department of Regulatory Agencies.  It is not clear if Plaintiffs assert each claim against each Defendant in both their individual and official capacity, or if Plaintiffs' limit their damages claims to the individually-named Defendants in their individual capacities.  In an abundance of caution, and to protect the rights of Defendants, Defendants will address all claims as though brought against all Defendants.

### STANDARD OF REVIEW ON MOTION TO DISMISS

Fed. R. Civ. P. 12(b)(1):  Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed.R.Civ.P. 12(b)(1).  A court "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Plaintiffs bear the burden of establishing the necessary elements of standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Each plaintiff must establish that they have standing to seek each form of relief in each claim.  *Bronson v. Swenson*, 500 F.3d 1099, 1106

4

(10th Cir. 2007).  Failure to establish standing deprives a federal court of subject matter jurisdiction.  *Schutz v. Thorne*, 415 F.3d 1128, 1132 (10th Cir. 2005).

Under Rule 12(b)(1), the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  However, standing is determined "from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keller*, 442 F.2d 674, 677 (10th Cir. 1971).  "A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing."  *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990).

Fed. R. Civ. P. 12(b)(6):  Under Rule 12(b)(6), the Court considers all well-pled factual allegations in the complaint as true.  *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007).  Conclusory allegations are not entitled to the assumption of truth.  *Masters v. Gilmore*, 663 F.Supp.2d 1027, 1037 (D. Colo. 2009).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court mandated a new "plausibility" standard when considering such motions, meaning a complaint must include "enough facts to state a claim to relief that is plausible on its face."  Although a plaintiff does not need to state each element of his claim precisely, he must plead minimal factual allegations on those material elements that must be proved.  *Id.*

## ARGUMENT

As set forth below, Plaintiffs have no standing to assert the claims in the Complaint.  Moreover, all Plaintiffs' claims against the State of Colorado and Governor John Hickenlooper are barred by Eleventh Amendment immunity.  Claims against Defendant Kelley and

Commissioner Epel are barred for failure to allege personal participation by these Defendants in any alleged constitutional violation.  Finally, any damage claims against the Defendants in their official capacities are precluded by the language of 42 U.S.C. § 1983 and barred by operation of the Eleventh Amendment to the U.S. Constitution.

## I.      Plaintiffs Lack Standing to Bring Their Claims

### A.      Standing Doctrine

Constitutional Standing:  The Constitutional standing doctrine ensures federal jurisdiction is exercised only where an Art. III "case or controversy" exists.  The inquiry focuses on "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."  *Warth*, 422 U.S. at 498-99 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

To this end, a plaintiff must demonstrate each of three standing requirements.  First, Plaintiffs each must establish that they have suffered an "injury in fact" that is both "concrete and particularized" and "actual and imminent, not conjectural or hypothetical."  *Day v. Bond*, 500 F.3d 1127, 1132 (10th Cir. 2007).  Second, Plaintiffs must establish "a causal relationship between the injury and the challenged conduct," meaning that "the injury fairly can be traced to the challenged action of the defendant, and has not resulted from the independent action of some third party not before the court."  *Id.*  Third, Plaintiffs must establish the injury they claim is capable of being redressed by a favorable decision, in the sense that "the prospect of obtaining relief from the injury as a result of a favorable ruling is not too speculative."  *Id.*

Prudential Standing:  Further, even if Art. III standing is established, a federal court may still exercise jurisdictional restraint though one of the so-called prudential standing doctrines.

One such limit requires that the plaintiff assert his or her own rights, rather than asserting the legal rights or interests of others.  *Warth*, 422 U.S. at 499.  Another prudential limitation dictates that federal courts decline to consider cases based upon abstract injuries that are so widely experienced as to constitute "generalized grievances."  *Valley Forge Christian College v. Americans United for the Separation of Church and State Inc.*, 454 U.S. 464, 474-75 (1982).  Federal courts may also decline to assert jurisdiction if the plaintiff's complaint does not fall within the "zone of interests to be protected or regulated by the statute or constitutional guarantee in question."  *Id.* at 475.

Organizational Standing:   Finally, an organization, such as the American Traditions Institute or the American Traditions Partnership, possesses standing to present the claims of its members only if:  "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hung v. Washington State Apple Advertizing Comm'n*, 432 U.S. 333, 343 (1977).

**B.      Each of Plaintiffs' Claims Must be Dismissed for Lack of Standing**

Each of Plaintiffs' claims must be dismissed for failure to establish one or more of the applicable standing requirements outlined above.  Because organizational standing can exist only where an individual member of the organization can demonstrate standing, *Hung*, 432 U.S. at 343, the State will address Mr. Lueck's standing before turning to the organizational standing of the American Tradition Institute and the American Tradition Partnership ("ATI/ATP").

Plaintiff's Alleged Injuries:  The facts alleged by Plaintiffs are insufficient to demonstrate any injury sufficient to confer Art. III standing.  *Whitmore*, 495 U.S. at 155-56.

Plaintiffs state the RES has caused them harm "through higher electricity costs, less reliable electricity service, greater emissions of pollutants regulated under the federal Clean Air Act and higher emissions of greenhouse gases." Complaint, ¶¶ 3-5. Plaintiff further alleges that, but for the RES, "the Plaintiffs would have received and could receive significantly lower cost, cleaner, and more reliable electricity." *Id.*, ¶ 145. Elsewhere, the Plaintiffs assert the RES "distort[s] the path of commerce, inflate[s] the price of electricity and divert[s] monies the public pays for electricity to inefficient renewable energy generators." *Id.*, ¶ 146.

The Reliability of Electrical Service

A conjectural decrease in the reliability of electricity service is not an injury for purposes of conferring standing. To confer standing on a plaintiff, the alleged injury must be "concrete," *Schlesinger*, 418 U.S. at 220, "distinct," *Hunt*, 432 U.S. at 342, and "specific," *Laird v. Tatum*, 408 U.S. 1, 14 (1972). The alleged injury cannot be "conjectural" or "hypothetical." *Los Angeles v. Lyons*, 46 U.S. 95, 101-02 (1983). A "remote, fluctuating, and uncertain" possible injury is insufficient to support standing. *Frothingham v. Mellon*, 262 U.S. 447, 487 (1923). "Abstract injury is not enough." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

The Complaint alleges Mr. Lueck is injured by less reliable electric service. Complaint, at ¶ 5. The Complaint further states that blackouts, brownouts, and economic losses are harms that could possibly result from unreliable electricity service. *Id.*, ¶¶ 80-81.

However, despite the fact that the RES has been in existence for nearly 7 years, Lueck does not allege he has experienced any power outage, brownout, blackout, or electrical

disruption, let alone an <u>increase</u> in such occurrences due to the RES.  Similarly, Lueck does not

allege <u>any</u> economic injury he has experienced as a result of such disruptions.[4]

Accordingly, Plaintiffs' allegations, while descriptive, do not allege any injury suffered

by Mr. Lueck in the form of decreased reliability of electricity service.  Instead, given the

passage of seven years since the RES became law, any such injury is purely conjectural and

uncertain.  Because Plaintiffs have failed to demonstrate that Mr. Lueck faces a "specific

present objective harm or a threat of specific future harm" in the form of electricity service

disruption, they have not carried their burden to demonstrate the existence of Art. III standing.

*Laird*, 408 U.S. at 14.

<u>A conjectural decrease in the reliability of electrical service is outside the zone of</u>

<u>interests of the Commerce Clauses</u>.  Plaintiffs' allegations of an injury from reduced reliability

of service should likewise be rejected for failure to satisfy the standards for prudential standing.

In addition to proving injury in fact, a plaintiff must show "the interest sought to be protected

by the complainant is arguably within the zone of interests to be protected or regulated by the

statute or constitutional guarantee in question." *Association of Data Processing Service Orgs.,*

*Inc. v. Camp*, 397 U.S. 150, 153 (1970).  The zone of interests test "denies the right of review if

the plaintiff's interests are . . . marginally related to or inconsistent with the purposes implicit in

the [constitutional provision]." *Clark v. Securities Industry Assn.*, 479 U.S. 388, 394 (1987).

To determine if an alleged injury is within the zone of interests of the dormant

commerce clause, this Court should turn to the historical purposes of that implied provision.

*See Wyoming v. Oklahoma*, 502 U.S. 437, 469-70 (1992) (Scalia, J., dissenting).  The dormant

---

[4] The Complaint likewise does not make or attempt to make any connection between an <u>increase</u> in electrical disruptions in the years since the RES was passed, only that there have been such disruptions.

commerce clause "confer[s] a 'right' to engage in interstate trade free from restrictive state regulation," and is "intended to benefit those who . . . are engaged in interstate commerce." *Dennis v. Higgins*, 798 U.S. 439, 448-49 (1991) (emphasis omitted).  In other words, the dormant commerce clause protects an individual's right to participate in the marketplace, free from discriminatory barriers to trade.  It does not, in contrast, confer a right to a certain quality, reliability or level of service in connection with whatever is ultimately purchased.  In short, the goal of the dormant commerce clause is consumer choice, not consumer protection.

Mr. Lueck's alleged reliability of service injury is just such a impermissible consumer protection complaint:  the <u>quality</u> of electric service one may purchase though interstate commerce is not within the zone of interests protected by that constitutional provision.  Because Mr. Lueck's allegations concerning a reliability of electric service injury are not within the zone of interests intended to be protected by the dormant commerce clause, this Court should dismiss the Complaint for lack of prudential standing.

<u>An Order of this Court would not improve the reliability of electrical service in Colorado</u>.  In addition, even if Plaintiffs did allege a cognizable injury in the form of less reliable electric service, Plaintiffs have failed to demonstrate any causal connection between Colorado's enactment of the RES and the alleged decrease in reliability of electric service.  Plaintiffs have likewise neither shown nor alleged such injury could be redressed by an order of this Court.

In a case that concerns the State's regulatory power, such as this, the Plaintiffs bear a particularly heavy burden in establishing causation and redressability.  *Lujan*, 504 U.S. at 562 (where "a plaintiff's asserted injury arises from the government's alleged unlawful regulation . . . of *someone else*, . . . causation and redressability ordinarily hinge on the response of that

regulated . . . third party to the government action . . . and perhaps the response of others as well") (emphasis in original).  This is true because the existence of the necessary elements of standing will depend "on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume to either control or predict."  *Id.*  Ultimately, in this type of situation, "standing is not precluded, but it is ordinarily substantially more difficult to establish."  *Id.*

There is perhaps no better example of this type of causation-obscuring complexity than the electric power grid and the multifaceted regulatory scheme that controls it.  Reliability of electric service is impacted by a myriad of inputs, including weather, time of day, consumer demand, equipment failure, power plant operations, and system maintenance schedules.  It would be nearly impossible to prove that an order of this Court enjoining the Colorado RES would have a measurable impact on the reliability of electric service.  Indeed, despite the existence of the statute for nearly seven years, Plaintiffs have failed to do so here.  "[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Id.* at 561.  As a result of their failure, Plaintiffs have not succeeded in carrying their burden to prove Art. III standing.

## Environmental Quality

Plaintiffs have not alleged a concrete environmental injury.  It is possible that environmental and aesthetic injuries can constitute injuries in fact for purposes of standing.  *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972).  However, to demonstrate such an injury, a plaintiff must show how he will be affected in his activities or pastimes by the alleged environmental injury.  *Id.*  Plaintiffs do not allege any concrete injury to Mr. Lueck's aesthetic

or recreational interests, and certainly not any injury sufficient to constitute injury in fact for Art. III standing.  Therefore, Plaintiff's Complaint should be dismissed for lack of standing.

Allegations of an increase in air pollution is not an injury for purposes of conferring standing, as it is outside the zone of interests of the Commerce Clause.  Assuming Plaintiffs' alleged environmental injuries have occurred, as this Court will typically do in evaluating a Motion to Dismiss, those injuries fall far outside the scope of interests sought to be protected by the dormant commerce clause.  As discussed above, the dormant commerce clause simply confers "a 'right' to engage in interstate trade free from restrictive regulation."  *Dennis*, 498 U.S. at 448 (1991).  The dormant commerce clause does *not* confer a right to purchase products in interstate commerce that are produced in the least polluting manner possible.  As a result, Mr. Lueck lacks prudential standing and the Complaint should be dismissed.

Plaintiffs did not and are unable to demonstrate that an order of this Court will decrease air pollution.  Plaintiffs' environmental injury arguments are lacking in causation and redressability.  As with the reliability argument, Plaintiffs must demonstrate that an Order of this Court would remedy the alleged increased pollution despite the overwhelming variety of alternative factors or inputs that could affect air pollution.  Plaintiffs fail to make this "difficult" demonstration.  *Lujan*, 504 U.S. at 562.

If the Court enjoined some or all of the RES' requirements, Colorado utilities would still be permitted to utilize eligible energy resources that they own or have contracted for, and would be able to obtain electricity from such resources, by contract or otherwise, now and in the future.  As Plaintiffs allege, Colorado utilities have made significant monetary investments in renewable energy projects, and there would be no requirement that utilities let those valuable and productive resources sit idle, even without the eligible energy mandates contained within

the RES.  In other words, Plaintiffs' Complaint does not demonstrate, or even allege that, but

for the RES, Colorado utilities would forego all renewable energy generation and thereby avoid

the alleged increased rates of air pollutant emissions.  Plaintiffs have therefore failed to

demonstrate causation and redressability, two necessary elements of Art. III standing.

Increased Electricity Rates

Any increase in electricity rates as a result of the RES would be a generalized grievance

that does not confer standing.    Should Plaintiffs here allege a redressable injury under Art. III,

federal Courts nevertheless refrain "from adjudicating 'abstract questions of wide public

significance' which amount to 'generalized grievances,' pervasively shared and more

appropriately addressed in the representative branches." *Valley Forge*, 454 U.S. at 474-75.

Rather, Plaintiffs must show "an injury that is peculiar to himself or to a distinct group of which

he is a part, rather than one shared in substantially equal measure by all or a large class of

citizens." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979).

Plaintiffs' arguments concerning electricity rates are an example of this type of

impermissible generalized grievance.  The rate increase injury alleged by Mr. Lueck is common

to all customers purchasing retail electricity from QRUs in Colorado.[5]  It is an alleged injury

common to the vast majority of electric ratepayers in Colorado, and far from particularized.

---

[5] As a result, this case is distinguishable from *Foremaster v. City of St. George*, 882 F.2d 1485 (10th Cir. 1989).  In *Foremaster*, the 10th Circuit Court of Appeals found that an electric utility customer suffered an injury in fact when a utility subsidized a religious organization by not charging it for electricity, and the ratepayer paid higher electricity rates as a result. *Id.* at 1488.  In that case, the alleged injury the ratepayer experienced was localized among a limited group of individuals – customers of a small, municipal electric utility.  In contrast, these Plaintiffs attempt to challenge a statute of statewide applicability, which affects nearly every resident of Colorado to some extent.  Therefore, unlike the plaintiff in *Foremaster*, Mr. Lueck's injuries are not sufficiently particularized to constitute the type of injury in fact necessary to confer prudential standing.

Because the injury Mr. Lueck asserts is common to nearly all residents of Colorado, it constitutes a "generalized grievance" of the sort precluded by prudential standing doctrine.

An Order of this Court will not redress the rate injury.  Plaintiffs do not allege that the alleged rate increase injury is redressable by an Order of this Court, and will be unable to do so for two reasons.  First, before any regulated utility can charge retail electric rates in Colorado, those rates must be considered by the PUC and found to be "just and reasonable."  § 40-6-111.  In addition to this regulatory oversight, electricity rates are subject to a number of highly complex inputs that could increase electricity rates even in the absence of a RES, including as fuel costs, fuel availability and transport, other regulatory schemes (such as federal environmental regulation), and the utility's authorized rate of return.  As with the alleged reliability of service injury, the process of setting rates is extraordinarily complex and multifaceted, making a direct causal relationship difficult to prove.  *See Lujan*, 504 U.S. at 562.  Therefore, utility rates in Colorado are not subject to simple "supply and demand" pricing that is easily traceable.  It would be nearly impossible to directly relate each provision of the RES to a specific and measurable rate impact, unsullied by these competing forces.[6]

Second, similar to their alleged environmental injuries, Plaintiffs' Complaint does not demonstrate or even allege that, but for the RES, Colorado utilities would be foregoing all

---

[6] This fact further distinguishes the instant case from *Foremaster.*  In *Foremaster*, the increased rates experienced by the plaintiff were the result of a simple subsidy to another entity within the utility's service territory, meaning the causal relationship between ending the subsidy and the effect on rates was very direct.  Conversely, the alleged rate injury in this case is the result of the complex process of resource selection.  Electric generating facilities are large, capital-intensive investments.  Both utilities and regulators consider a variety of highly complex factors in deciding which resources to build, acquire, or otherwise utilize.  In other words, unlike a subsidy, which can be simply discontinued, the alleged "cost causers" here are physical resources, which cannot be simply discontinued without severe and far-reaching economic consequences.

14

renewable energy generation and thereby avoiding the increased rates Plaintiffs allege they have

suffered.   Colorado QRUs may very well continue to use and opt to buy or generate energy

from eligible energy resources.

<u>Plaintiffs improperly attempt to assert the legal rights and interests of others</u>.   If the

Court assumes Lueck sufficiently alleges injury sufficient to satisfy the Art. III "case or

controversy" requirement, he must nevertheless "assert his own rights and interests, and cannot

rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499.

A litigant who sues in federal court to enforce the rights of others lacks prudential standing.

*RMA Ventures California v. SunAmerica Life Ins. Co.*, 576 F.3d 1070, 1073 (10th Cir. 2009).

Each of Plaintiffs' claims assert the legal rights of entities or individuals other than Mr.

Lueck and repeatedly violate this established and well-founded principal.   Assuming all facts in

the Complaint to be true, prudential standing bars Lueck's claims.

In the first claim, Plaintiffs claim the RES is unconstitutional for three reasons:

Plaintiffs first argue that §§ 40-2-124(1)(c)(I) and (V) (the minimum eligible energy resource

requirements) discriminate against "non-eligible" energy resource providers.   However, Mr.

Lueck is not a producer of non-eligible or non-renewable energy, but is instead an owner of

Techmate, a financial services software company.   *See* Complaint, ¶ 5.   As a result, any injury

that producers of non-eligible energy may experience as a result of the RES is outside the scope

of injuries Mr. Lueck may properly assert.   Second, Plaintiffs claim §§ 40-2-124(1)(c)(I)(C)-(E)

(the minimum eligible energy resource requirements, including minimum distributed generation

requirements) discriminate against eligible resources located outside of Colorado.   Mr. Lueck is

a resident of Colorado, and is not an energy producer, let alone an eligible energy producer.   As

a result, Mr. Lueck may not assert the third party injuries of any such non-Colorado producers.

Finally, Plaintiffs claim § 40-2-124(1)(c)(III), (VI), (VII), and (IX) (compliance value multipliers) unconstitutionally discriminate against out of state eligible energy resource producers.  Mr. Lueck is not an out of state producer of eligible energy resources.  As such, he has no standing to claim any injuries that third party, out of state, eligible energy resource providers may experience as a result of the RES.  Mr. Lueck therefore lacks prudential standing to assert the first claim.

Plaintiffs' second claim seeks injunctive relief for the alleged violations asserted in the first claim.  As a result, the second claim shares the prudential standing flaws of the first claim, and Mr. Lueck similarly lacks prudential standing to assert the second claim.  The fourth, sixth, eighth, tenth and twelfth claims each request injunctive relief based on the violation of the claim before.  To avoid repetitive argument later in this brief, Defendants point out that, like the second claim, these five claims share the prudential flaws of the odd-numbered claims they mimic, and are rightfully dismissed.

In the third claim, Plaintiffs argue that §§ 40-2-124(3), (4) and (7) (the eligible energy resource minimums for municipal utilities and cooperative electric associations) discriminate against non-eligible energy resource producers.  Mr. Lueck is not a producer of non-eligible or non-renewable energy and may not assert any injury to producers of non-eligible energy from the RES.  Lueck therefore lacks prudential standing to assert the third claim.

In the fifth claim, Plaintiffs argue § 40-2-124(1)(d) (the REC trading option) unconstitutionally discriminates against entities that produce RECs which do not meet the definition of a REC under the Colorado RES.  Mr. Lueck is a resident of Colorado.  He is  not a producer of RECs, nor of RECs with different characteristics than the Colorado definition.  Any

injury Lueck seeks to assert in claim five is that of a third party, non-Colorado REC producer, and Lueck lacks prudential standing to assert the fifth claim.

In claim seven, Plaintiffs argue § 40-2-124(1)(e) (the standard rebate offer) unconstitutionally discriminates against Colorado QRUs by imposing upon them a cost that is not similarly borne by out of state utilities.  Mr. Lueck is not a QRU.  As a result, he suffers no injury and may not seek redress for any competitive disadvantage QRUs may experience as a result of the RES.  Lueck lacks standing to assert the seventh claim.

In claim nine, Plaintiffs argue § 40-2-124(1)(f)(I) (cost recovery and competitive bidding for acquisition of eligible energy resources) benefits QRUs by exempting them from a cost they would otherwise bear, thus unconstitutionally burdening non-QRUs.  Mr. Lueck is not a non-QRU electric utility, may not seek redress on behalf of non-QRUs, and suffers no injury from any competitive disadvantage non-QRU electric utilities may experience as a result of the RES.[7] Mr. Lueck therefore lacks prudential standing to assert the ninth claim.

In the eleventh claim, Plaintiffs argue § 40-2-124(1)(g) (the retail rate impact rule) unconstitutionally burdens out of state producers of eligible energy and RECs by limiting the Colorado market for each.  Mr. Lueck is a resident of Colorado.  Further, he is not a producer of eligible energy, nor is he a producer of RECs.  As a result, any injury he seeks to assert in claim eleven is that of a third party, is outside the scope of injuries accruing to Mr. Lueck, and he therefore lacks prudential standing to assert the eleventh claim.

Because Mr. Lueck lacks individual standing, ATI and ATP lack organizational standing.  An organization possesses standing to present the claims of its members only if:  "(a)

---

[7] Defendants further note that no QRU has yet obtained PUC approval to avail themselves of this statutory provision.  As a result, even if injury *could* occur as a result of this provision, it is not sufficiently actual or imminent.

its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hung*, 432 U.S. at 343.  Mr. Lueck is the only ATI/ATP member identified in the Complaint.  As demonstrated above, Lueck has no standing to bring the claims in the Complaint.  Because Lueck has no standing to sue in his own right, Plaintiffs fail to satisfy the first prong of the requirements set forth in *Hung*.  *Id.*

Nor may ATI/ATP rely on their general mission in order to bolster their standing to bring these claims.  "A mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved'" and confer standing.  *Sierra Club*, 405 U.S. at 739.

Ultimately, because ATI and ATP lack standing to bring the claims in Complaint, it must be dismissed.  *Hung*, 432 U.S. at 343.

## II.     The Eleventh Amendment bars Plaintiffs' claims for damages against the State and all Defendants in their official capacities

Plaintiffs' Complaint requests damages from all Defendants under 42 U.S.C. § 1983. Complaint, Claim 13, ¶¶ 189-90.   The Eleventh Amendment to the U.S. Constitution provides that the "[j]udicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.   Except under limited circumstances not presented here, the Eleventh Amendment forbids a suit for damages against a state in federal court. *Ambus v. Granite Board of Education*, 995 F.2d 992, 994 (10th

Cir. 1993) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).  Accordingly, Plaintiffs'

damages claim against the State of Colorado must be dismissed.  *Id.*

To the extent Plaintiffs seek damages against Defendants in their official capacities

under § 1983, Plaintiffs' claim is actually an attempt to impose liability on their employer, the

State of Colorado.  *Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) ("[a] judgment

against a public servant in his official capacity imposes liability on the entity he represents");

*Hafer v. Melo*, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity

is treated as a suit against the state); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71

(1989) ("a suit against a state official in his or her official capacity is not a suit against the

official but rather is a suit against the official's office. As such, it is no different from a suit

against the State itself").  Plaintiffs' claim for money damages against Defendants in their

official capacities under § 1983 is barred by the Eleventh Amendment and properly dismissed

with prejudice pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

*Edelman*, 415 U.S. at 663.

### III.   Certain of Plaintiffs' claims for injunctive and declaratory relief are barred by the Eleventh Amendment

State of Colorado:  By its terms, the Eleventh Amendment bars all claims asserted

against a state, including equitable claims.  *Cory v. White*, 457 U.S. 85, 90-91 (1982).  This is

true even when plaintiffs seek to enjoin the enforcement of a state statute.  *Ex Parte Young*, 209

U.S. at 157 (a state officer sued to enjoin the enforcement of an act alleged to be

unconstitutional "must have some connection with the enforcement of the act, or else it is

merely making him a party as a representative of the state, and thereby attempting to make the

state a party").  Plaintiffs' declaratory and injunctive claims against the State of Colorado are

barred by the Eleventh Amendment.

Governor Hickenlooper:  Suits against state officials acting in their official capacities are

barred by the Eleventh Amendment. *Harris v. Champion*, 51 F.3d 901, 905-06 (10th Cir. 1995).

Courts recognize a general exception to this rule in cases where the relief sought is an

injunction of future unconstitutional conduct by a state official.  *Ex Parte Young*, 209 U.S. 123,

157 (1908). Plaintiffs erroneously rely on this exception in naming Governor Hickenlooper as a

defendant in this case with respect to their claims for injunctive or declaratory relief.

In order for a case to fall within the scope of *Ex Parte Young*, the official being sued

must be the party whose prospective actions would violate the law in question.  *David B. v.

McDonald*, 156 F.3d 780, 783 (7th Cir. 1998).  A state officer "must have some connection with

the enforcement of the act, or else it is merely making him a party as a representative of the

state, and thereby making the state a party." *Ex Parte Young,* 209 U.S. at 157.  The

constitutionality of every state statute cannot be tested by a suit against the state's governor

based solely on the theory that the governor is charged with the execution of state laws.  *Id;

Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001); *Shell Oil Co.

v. Noel*, 608 F.2d 208, 211 (1st  Cir. 1979).  Finding otherwise would allow the exception to

become the rule and abrogate state immunity.  *Connecticut Association of Health Care

Facilities, Inc. v. Rell*, 2010 WL 2232693 *5 (D. Conn. June 3, 2010).

The enforcement authority for Colorado's renewable energy statute is the PUC, a

constitutional commission whose voting commissioners possess the authority to regulate public

utilities. Colo. Const. Art. XXV; C.R.S. § 40-2-124, *et seq*.  In contrast, Governor

Hickenlooper's sole connection to the renewable energy statute challenged by Plaintiffs is that

he is charged generally with the execution of state laws. *See* Colo. Const. Art. IV, sec. 2. This basis alone is insufficient to overcome Governor Hickenlooper's Eleventh Amendment immunity, and these claims are rightfully dismissed. *Ex Parte Young*, 209 U.S. at 157.

Barbara Kelley: Defendant Kelley, likewise, has no enforcement authority related to the statute at issue. Kelley is the Executive Director of the Department of Regulatory Agencies (DORA). *See* Complaint, ¶ 8. She oversees the administration and management of the PUC. § 24‑1‑105(1). However, there is no mechanism in DORA's authorizing statute that provides Kelley's office any authority to direct the PUC's constitutional and statutory powers, duties and functions. *See* generally § 24-1-105, C.R.S. (2010) (describing the relationship between DORA and type 1 agencies such as the PUC); § 24-1-122(2)(a), C.R.S. (2010) (designating the PUC as a type 1 agency). Instead, the PUC is a constitutional entity, with all the powers of the general assembly to regulate public utilities unless or until such time as that authority is limited by the general assembly. *See* Colo. Const. Art. XXV. The PUC promulgates its own rules and regulations free from DORA's supervision. C.R.S. § 40-2-108. Moreover, The PUC is vested with broad authority to regulate rates of public utilities and to promulgate any rules necessary to administer and enforce the Public Utilities Law as set forth in Title 40 of Colorado's statutes. *See* §§ 40-3-102; 40‑2‑108. Plaintiffs' claims for injunctive and declaratory relief against Defendant Kelley are rightfully dismissed. *Ex Parte Young*, 209 U.S. at 157.

## IV.   Defendants Kelley and Epel, in their individual capacities, must be dismissed for lack of personal participation

Plaintiffs' Complaint names, among others, Defendants Kelley and Epel. See Complaint, caption. Plaintiffs seek damages under 42 U.S.C. § 1983 against Kelley in her individual capacity. Complaint, ¶¶ 8, 189-90. Plaintiffs likely seek damages against Defendant

Epel under 42 U.S.C. § 1983, as they sought similar damages against former Defendant Ron Binz.  See Complaint, ¶ 9.[8]  Plaintiffs therefore "seek to impose personal liability upon a government official for actions [taken] under color of state law."  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

To establish a claim for personal liability under § 1983, Plaintiffs must "show that the official, acting under color of state law, caused the deprivation of a federal right."  *Id.* at 166. Plaintiffs must further establish that the state actor was personally involved in the deprivation of that right.  *Ghallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").  An affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial."  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (emphasis added).  The requirement to demonstrate personal participation is mandatory regardless of the particular constitutional theory chose by a plaintiff.  *Foote*, 118 F.3d at 1423-24.

Plaintiffs make no allegation that Mr. Epel personally participated in any alleged constitutional deprivation.  Instead, Epel was substituted as a Defendant in this lawsuit in May, 2011, and was not a member of the Public Utilities Commission prior to that time.  It is therefore impossible for Epel to have participated in the deprivations set forth in the Complaint.

There are likewise no allegations that Defendant Kelley participated in any alleged violation of Plaintiffs' constitutional rights.  Instead, Plaintiffs simply allege that the PUC,

---

[8] Defendant Epel was substituted for Ron Binz.  *See* Minute Order, Document 17.

which implements the RES, reports to Kelley.  *See* Complaint, ¶ 8.  That allegation, even if true, is not sufficient to state a constitutional claim, as a defendant may not be held liable merely because of his or her supervisory position.  *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996).  Instead, there must be an affirmative link between the constitutional deprivation and the supervisor's personal participation, control or direction.  *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (citing *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)).

As demonstrated in the previous section with regard to Kelley, no such link exists. Kelley can pass no rule, regulation or law related to the RES, and has no enforcement authority with regard to such duties of the PUC.  In short, Kelley does not and can not direct or control the PUC or its decision-making, meaning Kelley could perform no act with regard to the RES that could affect Plaintiffs or violate Plaintiffs' rights.

The allegations in Plaintiffs' Complaint fall far short of what is necessary to show "personal participation" by Epel or Kelley in a violation of any of Plaintiffs' constitutional rights, and these Defendants are properly dismissed because the Complaint fails to state a claim against either Defendant in their individual capacities.  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).

### V.      States and state officials acting in their official capacities are not subject to suit under 42 U.S.C. § 1983

42 U.S.C § 1983 provides that "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage of any State … subjects or causes to be subjected to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured…." (emphasis added).  Plaintiffs have sued the State of Colorado and state officials acting in their official capacities under § 1983.

23

Neither a state nor a state official who acts in his or her official capacity, is a "person" within the meaning of § 1983. *Will v. Michigan Department of State Police,* 491 U.S. 58, 71 (1989); *Harris v. Champion,* 51 F. 3d 901, 905-06 (10th Cir. 1995). Because the State of Colorado is not a "person" subject to suit under these provisions of the law, Plaintiff's allegations against the State of Colorado fail as a matter of law. Similarly, the individually-named Defendants, acting in their official capacities, are not "persons" subject to suit under § 1983, and Plaintiffs' official capacity claims asserted against them fail as a matter of law. *Id.*

## CONCLUSION

Based on the reasons and authorities set forth in this Motion to Dismiss, Defendants request this Court to dismiss Plaintiffs' claims.

Respectfully submitted this 12th day of July, 2011.

JOHN W. SUTHERS
Attorney General


*s/ William V. Allen*
WILLIAM V. ALLEN*
KATHLEEN L. SPALDING*
ERIN OVERTURF*
Assistant Attorneys General
Attorneys for State Defendants
1525 Sherman Street, 7th Floor
Denver, Colorado  80203
Telephone:  (303) 866-5325
FAX:  (303) 866-5443
E-Mail: will.allen@state.co.us
            kit.spalding@state.co.us
            erin.overturf@state.co.us
*Counsel of Record

<u>CERTIFICATE OF SERVICE</u>

       This is to certify that on July 12, 2011, I electronically filed the foregoing Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the following:

Kent Holsinger
kholsinger@holsingerlaw.com

Laura L. Chartrand
lchartrand@holsingerlaw.com

Jack Silver
jsilver@holsingerlaw.com

*s/Mary Brown*

_____