**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-00859-WJM-KLM

**AMERICAN TRADITION INSTITUTE**,
**AMERICAN TRADITION PARTNERSHIP**, and
**ROD LUECK**,

       Plaintiffs,

v.

**THE STATE OF COLORADO**;
**JOHN HICKENLOOPER**, individually, and in his official capacity as Governor of Colorado;
**BARBARA J. KELLEY**, individually, and in her official capacity as Executive Director of the
Colorado Department of Regulatory Agencies;
**JOSHUA EPEL**, individually, and in his official capacity as a Chairman of the Colorado Public
Utilities Commission;
**JAMES TARPEY**, individually, and in his official capacity as a Commissioner of the Colorado
Public Utilities Commission;
**MATT BAKER**, individually, and in his official capacity as a Commissioner of the Colorado
Public Utilities Commission; and
**DOUG DEAN**, individually, and in his official capacity as Director of the Colorado Public
Utilities Commission,

       Defendants,

**ENVIRONMENT COLORADO**,
**COLORADO ENVIRONMENTAL COALITION**,
**SIERRA CLUB**, and
**THE WILDERNESS SOCIETY**,

       Proposed Defendant-Intervenors.

---

**PROPOSED MOTION TO DISMISS BY APPLICANTS FOR INTERVENTION**

---

## INTRODUCTION

Applicants for intervention Environment Colorado, et al. (collectively, the Conservation Groups) respectfully submit this proposed motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). As stated in their June 13, 2011 motion to intervene (Dkt. # 21), the Conservation Groups have requested that the Court accept their motion to dismiss instead of an Answer if intervention is granted.

The Conservation Groups initially requested leave to file their motion to dismiss following a grant of intervention by this Court. See Dkt. # 21 at 1. Subsequent events, however, have created the prospect that the Conservation Groups' arguments may be resolved before the Court decides intervention. On July 12, Defendants State of Colorado, et al. (collectively, the State) filed a motion to dismiss. Dkt. # 28. That motion and the Conservation Groups' motion to intervene are being briefed by the parties simultaneously because Plaintiffs have obtained an extension of time to respond to the motion to intervene. Dkt. # 26. Moreover, the State has moved to stay all proceedings in this case until its motion to dismiss is resolved. Dkt. # 31. If granted, such a stay could potentially delay a ruling on intervention until after a decision on the State's motion to dismiss.[1]

The Conservation Groups' proposed motion to dismiss merits consideration concurrently with the State's motion, because the proposed motion complements the State's argument on the issue of prudential standing. As discussed below, a well-developed body of case law holds that plaintiffs like those in this case lack prudential standing under the dormant Commerce Clause. This proposed motion also explains why applying prudential standing requirements is important

---

[1] The Conservation Groups respectfully request that the Court grant intervention without regard to any stay.

in such cases.  While the Conservation Groups do not oppose the State's other arguments for

dismissal, they submit this proposed motion to ensure that the Court is fully informed of the

relevant precedent and arguments on prudential standing.[2]

## SUMMARY OF ARGUMENT

The dormant Commerce Clause of the United States Constitution, U.S. Const. art. I, § 8, cl.

3, protects the interstate flow of commerce and prohibits protectionism between different states.

The renewable energy standard (RES) statute challenged in this case, Colo. Rev. Stat. § 40-2-

124, regulates Colorado utilities that are engaged in interstate commerce.  See Dkt. # 12 (Am.

Compl.) ¶¶ 52-59.  None of those companies, however, have chosen to challenge the RES

statute.

Instead, Plaintiffs American Tradition Institute (ATI), American Tradition Partnership

(ATP), and Rod Lueck (collectively, ATI) bring their dormant Commerce Clause challenge on

behalf of certain electricity consumers.  ATI does not allege that Plaintiffs are directly regulated

by the RES, or that the RES impairs their ability to sell electricity on the Colorado market.

Instead, they claim harms that are common to almost any consumer in the state, such as allegedly

increased utility bills and allegedly increased air pollution.

ATI lacks prudential standing to bring these claims.  Courts have repeatedly ruled that

consumers like ATI who experience passed-on costs or other indirect impacts from a law lack

prudential standing to challenge the law under the dormant Commerce Clause.  Moreover,

---

[2] Alternatively, if the Court rules on the State's motion to dismiss before deciding on
intervention, this proposed motion may be considered as an amicus curiae brief on the question
of prudential standing.  See, e.g., Liberty Res., Inc. v. Philadelphia Hous. Auth., 395 F. Supp. 2d
206, 209-210 (E.D. Pa. 2005); United States v. Strandlof, 746 F. Supp. 2d 1183, 1185 n. 2 (D.
Colo. 2010).

allowing consumers like ATI to bring Commerce Clause challenges based on the indirect costs of regulations would make legitimate economic and environmental regulation far more difficult.

Because Plaintiffs lack prudential standing to bring their challenge to Colorado's RES, the Court must dismiss this case under Rule 12(b)(6).

## ARGUMENT

### I.  STANDARD OF REVIEW

When faced with a Rule 12(b)(6) motion to dismiss, the reviewing court "must . . . accept all factual allegations in the complaint as true." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); see also Lane v. Simon, 495 F.3d 1182, 1186 (10th Cir. 2007) (accepting as true well-pleaded allegations). The reviewing court should view the "well-pleaded factual allegations in a complaint . . . in the light most favorable to the plaintiff" and "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999)).

In addition, courts attempt "to avoid, when possible, deciding constitutional questions" where dispositive nonconstitutional grounds such as standing are available. See U.S. v. Cardenas-Alatorre, 485 F.3d 1111, 1115 n. 9 (10th Cir. 2007). Such an approach avoids unnecessarily "deciding constitutional questions and thereby overturn[ing] legislative enactments . . . ." Rocky Mt. Christian Church v. Bd. of Cnty. Comm'rs, 613 F.3d 1229, 1239 (10th Cir. 2010) (quoting Cardenas-Alatorre, 485 F.3d at 1115 n. 9).

**II.    ATI LACKS PRUDENTIAL STANDING TO BRING CLAIMS UNDER THE DORMANT COMMERCE CLAUSE.**

### A.    Prudential Standing

For a federal court to decide a lawsuit, "the party bringing the suit must establish standing." The Wilderness Soc'y v. Kane Cnty., 632 F.3d 1162, 1168 (10th Cir. 2011) (quoting Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004)). That "standing jurisprudence contains two strands." Id. First, standing under Article III of the United States Constitution (Article III standing) requires the plaintiff to show that the challenged conduct caused her to suffer an "injury in fact" that can be redressed by a favorable judgment. Id. Article III standing is required for a court to have subject matter jurisdiction over the case. Id. at 1168 n. 1.

The second strand consists of prudential standing. Prudential standing doctrine involves "judicially self-imposed limits on the exercise of federal jurisdiction." Id. at 1168. The prudential standing requirement extends above and beyond the need to establish Article III standing. "[A] party's interest for the purposes of constitutional standing does not automatically confer prudential standing." Id. at 1171. As such, "[a] party may suffer a cognizable [Article III] injury but still not possess a right to relief." Id.; see also Hackford v. Babbitt, 14 F.3d 1457, 1465-66 (10th Cir. 1994) (dismissing plaintiff's claim for lack of prudential standing even assuming his alleged injury satisfied Article III standing requirements). The Tenth Circuit has held that prudential standing, unlike Article III standing, is not jurisdictional. Kane Cnty., 632 F.3d at 1168 n. 1. As a result, a motion to dismiss under Rule 12(b)(6) is appropriate.

Among other limits, prudential standing: (a) requires "that a plaintiff's complaint fall within the zone of interests protected by the law invoked" (the zone of interests test); and (b) enforces "the general prohibition on a litigant's raising another person's legal rights" (the third

4

party rights test).  Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 91 (2d Cir. 2009) (quoting

Newdow, 542 U.S. at 12); Bd. of Cnty. Comm'rs of Sweetwater Cnty. v. Geringer, 297 F.3d

1108, 1112 (10th Cir. 2002).  To establish prudential standing, a plaintiff must meet both the

zone of interests and the third party rights tests.  See Ben Oehrleins and Sons and Daughter, Inc.

v. Hennepin Cnty., 115 F.3d 1372, 1378-79 (8th Cir. 1997).

     **B.**     **ATI's Alleged Injuries Fail Both the Zone of Interests and Third Party**
               **Rights Requirements for Prudential Standing.**

     ATI's claims must be dismissed because they fail both the zone of interests and third

party rights tests.  Plaintiffs all sue on behalf of the same group of consumers—Rod Lueck on

behalf of himself, and both ATI and ATP on behalf of their members, including Mr. Lueck.

ATI, ATP and Mr. Lueck do not allege that they operate utilities or are directly regulated by the

RES statute.  See Am. Compl. ¶¶ 3-5; Dkt. # 12.1.  Instead they allege that Mr. Lueck, and other

members of ATI and ATP, have suffered four injuries resulting indirectly from the application of

Colorado's RES to electric utilities:

     (1) higher electricity bills;

     (2) less reliable electricity service and a resulting increase in costs;[3]

     (3) more emissions of pollutants regulated by the Clean Air Act; and

     (4) higher rates of greenhouse gas emissions.

See Am. Compl. ¶¶ 3-5.

     None of those alleged injuries involves interests that the dormant Commerce Clause

protects, or rights belonging to ATI under the dormant Commerce Clause.

---

[3] The Complaint does not allege that Mr. Lueck has actually experienced any loss of electrical service during the more than six years that Colorado's RES has been in effect—only that such a loss might hypothetically occur in the future.  See Am Compl. ¶ 5; Dkt. # 12.1 ¶ 10.

> **1.   ATI Claims Injuries That Are Not Even Marginally Related to the Zone of Interests Protected By the Dormant Commerce Clause.**

Prudential standing requires that plaintiffs show that the interest they seek to protect "is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Ass'n of Data Processing Serv. Orgs. v. Camp, 397 U.S. 150, 153 (1970). "[T]he zone of interests test . . . governs claims under the Constitution in general, and under the negative (dormant) Commerce Clause in particular." Individuals for Responsible Gov't v. Washoe Cnty., 110 F.3d 699, 703 (9th Cir. 1997) (internal quotation omitted).  To fall within the zone of interests, a plaintiff's complaint must "bear more than a marginal relationship to the purposes underlying the dormant Commerce Clause." City of Los Angeles v. Cnty. of Kern, 581 F.3d 841, 847 (9th Cir. 2009) (quoting Washoe Cnty., 110 F.3d at 703).

The increased consumer costs and environmental harms that ATI has alleged are not even marginally related to the purpose underlying the dormant Commerce Clause.  The purpose of the Commerce Clause is "to limit the power of States to erect barriers against interstate trade."  Id. (quoting Washoe Cnty., 110 F.3d at 703).  The Commerce Clause "prohibit[s] state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures" between different states.  C&A Carbone, Inc. v. Town of Clarkstown, N.Y., 511 U.S. 383, 390 (1994); see also On the Green Apartments, LLC v. City of Tacoma, 241 F.3d 1235, 1238 (9th Cir. 2001).

There is no connection between this purpose and ATI's complaint about higher electric bills or costs from allegedly unreliable electrical service.  Numerous courts have rejected dormant Commerce Clause claims based on similar allegations of passed-on costs or other indirect financial impacts.  For example, in Oehrleins, customers of waste hauling companies

6

challenged a regulation that did not directly regulate those customers, but limited where the

hauling companies could dispose of the customers' waste. 115 F.3d at 1376. As in this case, the

customers alleged that they were harmed by passed-on costs resulting from the higher fees paid

by the haulers. Id. at 1379. The Eighth Circuit ruled that the customers lacked prudential

standing because the injury alleged—that the customers "have to pay relatively high bills for the

disposal of their garbage"—did not implicate the anti-protectionism goal of the Commerce

Clause. "It is unlikely that [other states] are much concerned with what these plaintiffs pay for

trash service." Id. at 1382. Other courts have reached similar holdings. See, e.g., On the Green,

241 F.3d at 1237, 1239-40 (apartment complex's interest in avoiding higher bills for waste

disposal "is unrelated to the purposes animating" the dormant Commerce Clause); Washoe

Cnty., 110 F.3d at 701-04 (county residents' interest in avoiding higher bills for waste disposal is

unrelated to the purposes underlying the dormant Commerce Clause); Freeman v. Corzine, 629

F.3d 146, 157 (3d Cir. 2010) ("plaintiffs whose interest is merely one in avoiding a passed-on fee

or cost" fall outside zone of interests).[4]

    ATI's allegations of higher electric bills and costs from unreliable electric service face

the same problem. These indirect and passed-on costs are "not even marginally related to the

purposes underlying the dormant Commerce Clause." See Washoe Cnty., 110 F.3d at 703.

ATI members' utility bills, or the reliability of their electric service, do not implicate the anti-

protectionism goal of the Commerce Clause. "It is unlikely that [other states] are much

---

[4] In Freeman, the court held that plaintiffs did have standing to challenge limits on interstate
sales of wine, because their ability to purchase wine by mail from out-of-state wineries was
directly affected. 629 F.3d at 156-57.

concerned with what these plaintiffs pay for [electric] services."  See Oehrleins, 115 F.3d at 1382.

ATI also asserts that it brings this suit to protect its alleged interests in reducing air pollution and greenhouse gas emissions.  ATI, however, cannot show that the purpose of the dormant Commerce Clause is to stem such pollution.  Because the dormant Commerce Clause focuses on commerce and aims to thwart economic protectionism, ATI's asserted interests in reducing pollution are outside its reach.  See supra at 6; see generally, Robert R.M. Verchick, The Commerce Clause, Environmental Justice, And The Interstate Garbage Wars, 70 S. Cal. L. Rev. 1239, 1241-45, 1275-83, 1289-99 (July 1997) (discussing  role of Commerce Clause in advancing free market principles rather than environmental protection).  The environmental interests alleged by ATI fall outside the zone of interests of the dormant Commerce Clause.

Indeed, ATI's explanations of its alleged injuries underscore their lack of connection to the Commerce Clause.  ATI's allegations of higher costs and supposed environmental harms result from the substitution of renewable energy for fossil fuel power sources.  Am. Compl. ¶¶ 67, 79-111, 145-146.  Those alleged injuries, however, would exist even if Colorado required that all renewable energy be generated entirely out of state, and thus "impose[d] no barrier to interstate commerce."  See Cnty. of Kern, 581 F.3d at 847-48; see also, Washoe Cnty., 110 F.3d at 703-04) (both making similar point).  ATI's interests lie with opposing the use of renewable energy, not with any alleged protectionism in the Colorado RES.  See Am. Compl. ¶¶ 67, 79-111, 145-146.

## 2.      ATI Fails The Third Party Rights Test.

ATI also lacks prudential standing because it attempts to assert the dormant Commerce Clause rights of third parties.  A plaintiff generally "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Kane Cnty., 632 F.3d at 1168 (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). The Supreme Court and the Tenth Circuit have recognized that resolving a controversy "on the basis of the rights of third persons not parties to the litigation" is problematic for two reasons.  Id. at 1171 (quoting Singleton v. Wulff, 428 U.S. 106, 113-14 (1976)).  "First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights . . . do not wish to assert them."  Id. at 1171 (quoting Singleton, 428 U.S. at 113-14).  "Second, third parties themselves usually will be the best proponents of their own rights [and] courts . . . should prefer to construe legal rights only when the most effective advocates of those rights are before them."  Id. at 1172 (quoting Singleton, 428 U.S. at 1114).

The rights provided by the dormant Commerce Clause accrue to entities regulated by the challenged law, or who are attempting to do business across state boundaries.  See Dennis v. Higgins, 498 U.S. 439, 448 (1991) (the dormant Commerce Clause confers a "right to engage in interstate trade free of restrictive state regulation" (internal quotation omitted)).  By contrast, "consumers paying the end-line cost of an economic regulation" cannot claim any personal right under the dormant Commerce Clause.  Oehrleins, 115 F.3d at 1381; see also Farmers State Bank v. Gronstal, 598 F. Supp. 2d 960, 965-67 (S.D. Iowa 2009).

For example, in Oehrleins the court ruled that local customers facing passed-on garbage disposal fees lacked prudential standing to challenge a waste control regulation that did not

directly regulate them.  See supra at 6-7.  The court noted that the plaintiffs were not seeking to

defend "their own rights to purchase goods or do business across state borders, without being

subject to a discriminatory" law.  Oehrleins, 115 F.3d at 1381.  Instead, the customers' "alleged

injury [wa]s the economic consequence of the County's restriction[s]" on waste haulers.  Id.  The

court concluded that "[t]he [customers] cannot claim any personal right under the Commerce

Clause to lower garbage bills.  Any relief due [them] turns on the rights of the haulers" under the

Commerce Clause.  Id. (emphasis added); see also, Nat'l Solid Waste Mgmt Assoc. v. Pine Belt

Reg'l Solid Waste Mgmt Auth., 389 F.3d 491, 499 (5th Cir. 2004) (no prudential standing where

"these plaintiffs do not ship . . . any waste they collect [within Mississippi] to any location

outside of Mississippi") (emphasis in original); Gronstal, 598 F. Supp. 2d at 964, 966-67 (bank

faced with "derivative" injury of higher costs lacked prudential standing to challenge regulation

that affected automatic teller machine providers with whom bank contracted).[5]

As in Oehrleins, ATI lacks prudential standing to bring its dormant Commerce Clause

claims.  ATI seeks to assert the Commerce Clause rights of Colorado utilities that are regulated

by the RES law, and of out-of-state power generators seeking to sell electricity in Colorado.  See

Dennis, 498 U.S. at 448.  ATI, however, does not allege that plaintiffs are part of either group.

---

[5] Courts have allowed third party standing in exceptional circumstances when: (1) a plaintiff has an especially close relationship with the person holding the right (e.g., a doctor asserting the privacy rights of a patient he or she is advising on a confidential basis); and (2) "some genuine obstacle" prevents the third party from asserting its own rights.  Kane Cnty., 632 F.3d at 1172. Neither condition is met here.  First, ATI's customer relationship with electric utilities does not constitute a "special relationship."  See Gronstal, 598 F. Supp. 2d at 967.  "If such were the case, then end-line consumers could always assert the Commerce Clause claims of the businesses from whom they purchase goods or services."  Oehrleins, 115 F.3d at 1381.  Second, ATI does not allege that any "barrier or practical obstacle" prevents regulated utilities or out-of-state electric generation companies from asserting their rights under the Commerce Clause. As a result, ATI fails to satisfy the exception to the ban on third party standing.

<u>See</u> Am. Compl. ¶¶ 3-5.  Instead, ATI alleges only that plaintiffs have incurred increased costs as

an "indirect result" of requirements imposed on utilities.  <u>See</u> <u>Oehrleins</u>, 115 F.3d at 1379.  ATI

"cannot claim any personal right under the Commerce Clause to lower [electricity] bills.  Any

relief due [ATI] turns on the rights of the" entities regulated by the RES statute.  <u>Id.</u> at 1381.

Moreover, ATI cannot claim that the Commerce Clause gives it a personal right to reduced air

pollution or greenhouse gas emissions: the dormant Commerce Clause provides no such right to

<u>anyone</u> because environmental protection falls well outside the zone of interests it protects.  <u>See</u>

<u>supra</u> at 8.

<b>C.     Enforcing the Requirements of Prudential Standing Protects Colorado's<br>Ability to Engage in Economic and Environmental Regulation.</b>

Finally, this case provides a good illustration of why courts require plaintiffs to have

prudential standing.  Allowing derivative Commerce Clause challenges like the one in this case

would expose the State of Colorado to potentially crippling damages claims and make legitimate

economic and environmental regulation far more difficult.

If ATI has standing under the Commerce Clause, virtually everyone else in Colorado

does as well.  Any utility customer, and most purchasers of numerous other goods and services,

could bring Commerce Clause cases challenging economic regulations based on their costs to

consumers or their environmental impacts.  As the <u>Oehrleins</u> court noted, "if the ultimate cost of

economic regulation to consumers were within the zone of interests of the Commerce Clause,

then every consumer could properly challenge such regulations.  We decline to expand the scope

of claims cognizable under the Commerce Clause this far." 115 F.3d at 1382.

Allowing consumers to sue over such indirect costs "could have serious repercussions on

state and local governments' ability to enact economic regulations," because plaintiffs like ATI

11

seek money damages.  Id. at 1382 n. 9; see also, Am. Compl. ¶¶ 189-190 (Dkt. # 12) (seeking

money damages).[6]  Governments attempting to address serious social problems "would risk

enormous liability if such regulation is later invalidated. . . . [S]uch risk presents a heavy burden

to good faith efforts to enact valid laws intended to further important local goals."  Oehrleins,

115 F.3d at 1382 n. 9.  This Court should not impose such a burden on the State of Colorado.

## CONCLUSION

For the reasons stated above, ATI's Amended Complaint should be dismissed with

prejudice.

Respectfully submitted July 29, 2011,

/s/ Michael S. Freeman
Michael S. Freeman
Michael A. Hiatt
Earthjustice
1400 Glenarm Place, Suite 300
Denver, CO 80202
(303) 623-9466
mfreeman@earthjustice.org
mhiatt@earthjustice.org

Victoria R. Mandell
Western Resource Advocates
2260 Baseline Rd, Suite 200
Boulder CO 80302
303-444-1188 x224
303-786-8054 (fax)
vmandell@westernresources.org

*Attorneys for Proposed Defendant-Intervenors.*

---

[6] In that regard, ATI's case differs from many non-Commerce Clause lawsuits brought by public interest groups that are filed under the Administrative Procedure Act.  The Administrative Procedure Act provides a broad waiver of sovereign immunity, but only for lawsuits "seeking relief other than money damages" from the government.  5 U.S.C. § 702 (emphasis added).

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of July, 2011, I filed the foregoing PROPOSED MOTION TO DISMISS BY APPLICANTS FOR INTERVENTION with the Court's electronic filing system, thereby generating service upon the following parties of record:

Jack S. Silver
Kent H. Holsinger
Laura L. Chartrand
Holsinger Law, LLC
104 Broadway
3rd Floor
Denver, CO  80203
jsilver@holsingerlaw.com
kent@holsingerlaw.com
lchartrand@holsingerlaw.com

Erin Alene Overturf
Kathleen L. Spalding
Colorado Attorney General's Office
1525 Sherman Street
Denver, CO  80203
erin.overturf@state.co.us
kit.spalding@state.co.us

William V. Allen
Colorado Attorney General's Office –
Department of Law
1525 Sherman Street
7th Floor
Denver, CO  80203
will.allen@state.co.us

/s/ Michael S. Freeman