**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 11-cv-00859-WJM-BNB

AMERICAN TRADITION INSTITUTE,
AMERICAN TRADITION PARTNERSHIP, and
ROD LUECK,

      Plaintiffs,

v.

STATE OF COLORADO,
JOHN HICKENLOOPER, individually and in his official capacity as the Governor of
Colorado,
BARBARA J. KELLEY, individually and in her official capacity as the Executive Director
of the Colorado Department of Regulatory Agencies,
JOSHUA EPEL, individually and in his official capacity as Chairman of the Colorado
Public Utilities Commission,
JAMES TARPEY, individually and in his official capacity as a Commissioner of the
Colorado Public Utilities Commission,
MATT BAKER, individually and in his official capacity as a Commissioner of the Colorado
Public Utilities Commission, and
DOUG DEAN, individually and in his offical capacity as Director of the Colorado Public
Utilities Commission,

      Defendants,

and

ENVIRONMENT COLORADO,
COLORADO ENVIRONMENTAL COALITION,
SIERRA CLUB, and
THE WILDERNESS SOCIETY,

      Intervenor-Defendants.

---

**ORDER RESOLVING MOTIONS TO DISMISS**

---

This action challenges the constitutionality of Colorado's Renewable Energy

Standard statute (the "RES"), Colorado Revised Statute § 40-2-124.  Specifically,

Plaintiffs seek a declaration that particular provisions of the RES and their implementing

regulations violate the Commerce Clause of the United States Constitution, injunctive relief preventing enforcement of those provisions, and damages under 42 U.S.C. § 1983.

This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 28) and Intervenor-Defendants' Motion to Dismiss (ECF No. 37).  In Defendants' Motion to Dismiss, they argue that Plaintiffs lack constitutional and prudential standing to bring this action, that some of Plaintiffs' claims are barred by the Eleventh Amendment, and that some claims should be dismissed for failure to state a claim.  (ECF No. 28.)  Intervenor-Defendants' Motion to Dismiss focuses entirely on the issue of prudential standing.  (ECF No. 37.)  The Motions are fully briefed (*see also* ECF No. 39, 49, 53, 60, 63), and ripe for adjudication.

For the following reasons, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART, and Intervenor-Defendants' Motion to Dismiss is DENIED.

## I.  BACKGROUND

For purposes of the Motions to Dismiss, the Court properly accepts as true the allegations in Plaintiffs' Amended Complaint for Injunctive and Declaratory Relief (the "operative Complaint").  (*See* "Legal Standards" section below.)

## A.    The Operative Complaint and the RES

Plaintiffs are the American Tradition Institute ("ATI"), the American Tradition Partnership ("ATP"), and Rod Lueck.  (ECF No. ¶¶ 3-5.)  ATI and ATP are organizations whose members are allegedly harmed by the RES.  (*Id.* ¶¶ 3, 4, 126.)  Mr. Lueck is a member of both ATI and ATP.  (*Id.* ¶ 5.)

The named Defendants are:  (1) the State of Colorado; (2) John Hickenlooper, the Governor of Colorado; (3) Barbara J. Kelley, the Executive Director of the Colorado

Department of Regulatory Agencies; and (4) Joshua Epel (Chair), James Tarpey (Commissioner), Matt Baker (Commissioner), and Doug Dean (Director) of the Colorado Public Utilities Commission ("PUC").  (*Id.* ¶¶ 7-12; *see also* ECF No. 15, 17.)

Plaintiffs bring six claims for declaratory relief and six claims for injunctive relief, alleging that particular provisions of the RES violate the dormant Commerce Clause of the United States Constitution.[1]  (ECF No. 12, ¶¶ 156-188.)  Plaintiffs also bring a claim for damages under 42 U.S.C. § 1983.  (*Id.* ¶¶ 189-190.)  Plaintiffs challenge the following provisions of the RES[2]:

- The Electric Resource Standards Program, Colo. Rev. Stat. § 40-2-124(1)(c), and the Municipally Owned Electric Utility Program, Colo. Rev. Stat. § 40-2-124(3) & (4).  (*See* ECF No. 12, ¶¶ 128-146, 156-168.)  These Programs, *inter alia*, require qualifying retail electric utilities to generate, or cause to be generated, electricity from recycled energy and/or renewable energy resources in certain minimum amounts by certain years.  *See* Colo. Rev. Stat. § 40-2-124(1)(c)(I), (1)(c)(V), (3) & (4).  Plaintiffs allege that these Programs violate the dormant Commerce Clause by limiting the sales of electricity generated from sources that participate in the interstate retail electricity market and by discriminating in favor of Colorado energy generators.  (ECF No. 12, ¶¶ 128-146, 156-168.)

---

[1] The Commerce Clause empowers the U.S. Congress "[t]o regulate Commerce . . . among the several States . . . ."  U.S. Const. art. I, § 8, cl. 3.  The U.S. Supreme Court interprets the Commerce Clause as authorizing Congress to regulate "the channels of interstate commerce," "persons or things in interstate commerce," and "those activities that substantially affect interstate commerce."  *United States v. Morrison*, 529 U.S. 598, 609 (2000).  Although the text of the Commerce Clause does not expressly limit the power of states, the Supreme Court has read into the Commerce Clause a "negative implication" – the dormant Commerce Clause – that prohibits states from passing laws that improperly burden or discriminate against interstate commerce.  *See, e.g.*, *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-39 (2008).

[2] The Court properly takes judicial notice of the RES's provisions.  *See* Fed. R. Evid. 201(b) (providing that judicial notice may be taken of a fact that is "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004) (stating that, in evaluating a motion to dismiss, a court may take judicial notice of facts that are a matter of public record).

- The Tradable Renewable Energy Credits Limitation Program, Colo. Rev. Stat. § 40-2-124(1)(d).  (*See also* ECF No. 12, ¶¶ 147-148, 169-173.)  This Program creates a system of tradable renewable energy credits that may be used by a qualifying retail electric utility to comply with the renewable energy standards.  *See* Colo. Rev. Stat. § 40-2-124(1)(d).  Plaintiffs allege that this Program violates the dormant Commerce Clause by effectively prohibiting out-of-state regional trading systems from participating in the interstate credit trading market.  (ECF No. 12, ¶¶ 147-148, 169-173.)

- The Standard Rebate Offer Program, Colo. Rev. Stat. § 40-2-124(1)(e).  (*See also* ECF No. 12, ¶¶ 149-150, 174-178.)  Under this Program qualifying retail electric utilities provide rebates to customers who install solar electric generation on their premises.  *See* Colo. Rev. Stat. § 40-2-124(1)(e).  Plaintiffs allege that this Program violates the dormant Commerce Clause by imposing a cost on qualifying retail electric utilities that is not imposed on other domestic and foreign utilities, thereby burdening the affected utilities' participation in the interstate electricity market.  (ECF No. 12, ¶¶ 149-150, 174-178.)

- The Recovery of Costs Incentives Program, Colo. Rev. Stat. § 40-2-124(1)(f)(I).  (*See also* ECF No. 12, ¶¶ 151-152, 179-183.)  This Program, *inter alia*, exempts certain eligible retail electric utilities from having to comply with the PUC's competitive bidding requirements.  *See* Colo. Rev. Stat. § 40-2-124(1)(f)(I).  Plaintiffs allege that this Program violates the dormant Commerce Clause by imposing costs on non-eligible utilities that are not imposed on the eligible utilities, thereby burdening the non-eligible utilities' participation in the interstate electricity market.  (ECF No. 12, ¶¶ 151-152, 179-183.)

- The Retail Rate Impact Rule, Colo. Rev. Stat. § 40-2-124(1)(g).  (*See also* ECF No. 12, ¶¶ 153-154, 184-188.)  This Rule, *inter alia*, allows eligible utilities to acquire more than the minimum amount of eligible energy resources and renewable energy credits.  *See* Colo. Rev. Stat. § 40-2-124(1)(g).  Plaintiffs allege, *inter alia*, that the Program violates the dormant Commerce Clause by limiting the amount of renewable resources and renewable energy credits that can be acquired by foreign companies.  (ECF No. 12, ¶¶ 153-154, 184-188.)

## B.    Procedural History

Plaintiffs filed this action on April 4, 2011.  (ECF No. 1.)  On April 22, 2011, they

filed the operative Complaint.  (ECF No. 12.)  On May 16, 2011, Joshua Epel was

substituted in for Ron Binz as a Defendant, given Epel's replacement of Binz as Chair of

the PUC.  (ECF No. 15, 17.)

4

On July 12, 2011, Defendants filed their Motion to Dismiss.  (ECF No. 28.)
Plaintiffs have filed a Response to the Motion to Dismiss (ECF No. 39), and Defendants
filed a Reply (ECF No. 49, 50).  On July 14, 2011, Defendants filed a Motion to Stay
(ECF No. 31), to which Plaintiffs filed a Response (ECF No. 40).  On August 23, 2011,
U.S. Magistrate Judge Kristen L. Mix granted the Motion to Stay, staying the proceedings
pending resolution of Defendants' Motion to Dismiss.  (ECF No. 46.)

On June 13, 2011, Environment Colorado, Colorado Environmental Coalition,
Sierra Club, and the Wilderness Society (the "Intervenor-Defendants") filed a Motion to
Intervene and for Leave to File Rule 12(b) Motion to Dismiss.  (ECF No. 21.)  Plaintiffs
filed a Response to the Motion to Intervene (ECF No. 33), and the Intervenor-Defendants
filed a Reply (ECF No. 38).  On July 29, 2011, Intervenor-Defendants filed a Proposed
Motion to Dismiss.  (ECF No. 37.)[3]

On February 21, 2012, this Court granted Intervenor-Defendants' Motion to
Intervene and accepted their Proposed Motion to Dismiss as filed.  (ECF No. 51.)
Subsequently, Plaintiffs filed a Response to Intervenor-Defendants' Motion to Dismiss
(ECF No. 53), Intervenor-Defendants filed a Reply (ECF No. 60), and Plaintiffs filed a
Sur-Reply (ECF No. 63).

The Motions to Dismiss filed by Defendants and Intervenor-Defendants are now
ripe for adjudication.

---

[3] On August 19, 2011, Plaintiffs moved to strike Intervenor-Defendants' Proposed
Motion to Dismiss.  (ECF No. 41).  Magistrate Judge Mix denied the Motion to Strike,
concluding that the Court would resolve whether to accept the Proposed Motion to Dismiss in its
ruling on the Motion to Intervene.  (ECF No. 45.)

## II.  LEGAL STANDARDS

Defendants' Motion to Dismiss is brought pursuant to Federal Rules of Civil

Procedure 12(b)(1) (lack of subject-matter jurisdiction) and 12(b)(6) (failure to state a

claim), while Intervenor-Defendants' Motion to Dismiss is brought under Rule 12(b)(6).

There is some dispute between the parties, and a lack of clarity in the law, regarding

which of these two rules applies to the issues of prudential standing and Eleventh

Amendment immunity.[4]  However, the parties agree that no matter which rule applies,

the Court should accept the operative Complaint's allegations as true and construe them

in a light most favorable to Plaintiffs as to every purported basis for dismissal in the

Motions to Dismiss.  (ECF No. 28, at 4-5; ECF No. 37, at 3; ECF No. 39, at 2; ECF No.

53, at 3.)  *See also Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("For purposes of ruling on

a motion to dismiss for want of standing, . . . courts must accept as true all material

allegations of the complaint, and must construe the complaint in favor of the complaining

party."); *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)

(stating that, in evaluating a Rule 12(b)(6) motion, a court must "assume the truth of the

plaintiff's well-pleaded factual allegations and view them in the light most favorable to the

plaintiff").

---

[4] (*See* ECF No. 28, at 4-5, 19; ECF No. 37, at 3.)  As to the issue of Eleventh Amendment immunity, *see also Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998) (explicitly stating that the Supreme Court has not decided whether Eleventh Amendment immunity is a matter of subject-matter jurisdiction).  As to prudential standing, *compare Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007) (stating that prudential standing is jurisdictional), *and Thompson v. Cnty. of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994) (same), *with Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) (stating that a dismissal for lack of prudential standing should be under Rule 12(b)(6)).

## III.  DISCUSSION

Defendants move to dismiss the operative Complaint on the grounds that Plaintiffs lack constitutional and prudential standing to bring this action, that certain claims in the operative Complaint are barred by the Eleventh Amendment, and that certain claims fail to state a claim upon which relief can be granted.  (ECF No. 28.)  Intervenor-Defendants' Motion to Dismiss focuses entirely on the argument that Plaintiffs lack prudential standing.  (ECF No. 37.)

### A.    Standing

#### 1.    Applicable Law

Article III of the United States Constitution limits the jurisdiction of federal courts to "[c]ases" and "[c]ontrover[ies]."  U.S. Const. art. III, § 2.  "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976).

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "The gist of the question of standing" is whether the plaintiffs have "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions."  *Baker v. Carr*, 369 U.S. 186, 204 (1962).  Standing "is perhaps the most important of the[] doctrines" limiting the federal judicial power.  *Allen v. Wright*, 468 U.S. 737, 750 (1984).

"[T]he irreducible constitutional minimum of standing contains three elements": the plaintiff must have suffered a "concrete and particularized" injury that is "actual or imminent" (*i.e.*, an "injury in fact"), there must be "a causal connection between the injury and the conduct complained of," and it must be "likely . . . that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (quotation marks omitted); *see also Allen*, 468 U.S. at 751 ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.").

In terms of associational standing, an association has standing to bring suit on behalf of its members "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

*Id.* (citations, quotations, and brackets omitted).

"Beyond the constitutional requirements [for standing], the federal judiciary has

also adhered to a set of prudential principles that bear on the question of standing."

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454

U.S. 464, 474 (1982); *see also Allen*, 468 U.S. at 751 (describing prudential standing

principles as "judicially self-imposed limits on the exercise of federal jurisdiction").  First,

"even when the plaintiff has alleged injury sufficient to meet the 'case or controversy'

requirement, . . . the plaintiff generally must assert his own legal rights and interests, and

cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth*, 422

U.S. at 499.  Second, "when the asserted harm is a 'generalized grievance' shared in

substantially equal measure by all or a large class of citizens, that harm alone normally

does not warrant exercise of jurisdiction."  *Id.*  And third, "the interest sought to be

protected [must be] arguably within the zone of interests to be protected or regulated by

the statute or constitutional guarantee in question."  *See Ass'n of Data Processing Serv.*

*Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970).  *See also Allen*, 468 U.S. at 751

(summarizing all three prudential standing principles).

    2.    **Analysis**

        a.    **Allegations Regarding Standing in Complaint and Tanton**
             **Declaration**

As to the question of standing, Defendants' Motion to Dismiss focuses almost

entirely on the argument that Plaintiff Lueck, as an end-user consumer of electricity,

lacks standing to bring this action.  (*See* ECF No. 28, at 6-17.)  In less than one page of

argument, Defendants also argue that ATI and ATP do not have standing on the grounds

that Plaintiff Lueck does not have standing, and that ATI and ATP may not rely on their

general mission in order to bolster their claim of standing.  (*Id.* at 17-18).  In briefing

these issues, Defendants obviously could only rely on their interpretation of Plaintiffs'

allegations of standing in the operative Complaint, which is less than a model of clarity.

(*See* ECF No. 12, ¶¶ 3-5, 126-127.)

However, in response to Intervenor-Defendants' Motion to Dismiss, Plaintiffs ATI

and ATP for the first time clarify that they are also pursuing this action on behalf of their

members who are electric generator and transmission utilities ("electric utility members"),

and a member who is a coal-producing company ("coal-producing member").  (ECF No.

53, at 5-8.)  With its Response, Plaintiffs filed the Declaration of Thomas Tanton, ATI's

Executive Director.  (ECF No. 53-1.)  In his Declaration, Mr. Tanton declares that:

> Among [the membership of ATI and ATP] are electric power generating
> and transmission companies that generate energy from coal, natural gas
> and oil-fired and combustion turbine generation facilities.  One (Company
> A) is located in multiple states and services customers within those states,
> including Colorado.  Another electric power generation company (Company
> B) operates exclusively within Colorado.  Both companies generate energy
> that flows through an interstate transmission system and both engage in
> interstate commerce.  Both are members of ATI and ATP. . . . Both
> companies are forced to acquire renewable energy due to the Colorado
> renewable energy mandate at a cost higher than if they were not required
> to obtain renewable energy and instead rely exclusively on coal and natural
> gas for generation.

(*Id.* ¶¶ 4-5.)  Mr. Tanton further declares:

> The family of Alpha Natural Resources of companies (Alpha) are members
> of ATI.  These include Alpha Natural Resources Services, LLC and its
> affiliates Alpha Coal West and Alpha Coal Sales.  Coal used to generate
> electricity for the Western Interconnect, including the Western Area Power
> Administration, is produced by Alpha Coal West and sold by Alpha Coal
> Sales. . . .  Alpha is shut out of that part of the interstate market for coal
> that would have existed but for the Colorado RES and thereby suffers
> injury from losses in sales.

(*Id.* ¶¶ 9-10.)

In evaluating a plaintiff's standing at the motion to dismiss stage, a court may

10

consider not only the allegations in the complaint, but also factual averments made by declaration or affidavit.  In *Warth v. Seldin*, the U.S. Supreme Court stated,

> [In] ruling on a motion to dismiss for want of standing, [courts] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.  At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint *or by affidavits*, further particularized allegations of fact deemed supportive of plaintiff's standing.  If, after this opportunity, the plaintiff's standing does not adequately appear from *all materials of record*, the complaint must be dismissed.

422 U.S. at 501-02 (emphasis added).  Subsequent decisions by the Supreme Court and lower courts have reinforced this rule.  *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay*, 484 U.S. 49, 65 (1987) ("[A] suit will not be dismissed for lack of standing if there are sufficient allegations of fact – not proof – in the complaint *or supporting affidavits*.") (emphasis added) (internal quotations omitted); *Sac & Fox Nation of Mo. v. Pierce*, 213 F.3d 566, 573 (10th Cir. 2000) ("The Tribes' uncontroverted affidavits, albeit conclusory, support their allegations of injury. . . . [A] plaintiff may submit affidavits to particularize allegations of fact in support of its standing."); *Figueroa v. Am. Bankers Ins. Co. of Fla.*, 517 F. Supp. 2d 1266, 1268 (D. Colo. 2006) ("[I]f the complaint itself does not establish the plaintiff's standing, and the plaintiff does not produce sufficient evidence by affidavit or otherwise to do so, dismissal of the complaint is appropriate.").[5]

---

[5] Intervenor-Defendants argue that this Court may not consider the Tanton Declaration, and that it may only consider the contents of the operative Complaint, because a declaration cannot be considered on a 12(b)(6) motion to dismiss.  (ECF No. 60, at 1-2 (citing *Prager v. LaFaver*, 180 F.3d 1185 (10th Cir. 1999), and *David v. City & Cnty. of Denver*, 101 F.3d 1344 (10th Cir. 1996)).)  As previously stated, the law is not clear whether Intervenor-Defendants properly brought their motion under Rule 12(b)(6) rather than Rule 12(b)(1).  However, the law *is* clear that, on a motion to dismiss based on lack of standing, a court may consider allegations of standing made in a declaration or affidavit submitted during briefing on a motion to dismiss. *Prager* and *David* did not involve the issue of standing, and are therefore inapposite.

The Court does not approve of the fact that Plaintiffs waited until the filing of their Response to Intervenor-Defendants' Motion to Dismiss to clarify that ATI and ATP bring this action based on injuries allegedly suffered by electric utility members and a coal producing member.  However, neither Defendants nor Intervenor-Defendants have argued or otherwise shown how they have been prejudiced by this delay.  Indeed, discovery in this action has been stayed since August 23, 2011 (a date approximately four months after the operative Complaint was filed and less than five months after this action began), and, notably, this was a stay requested by Defendants.  (ECF No. 46, 31.) The Court finds it appropriate, at this early stage of the proceedings, to consider and accept Mr. Tanton's declaration as clarification of the general allegations of injury and standing made in the operative Complaint.[6]

### b.    Constitutional Standing of ATI

In considering both the operative Complaint and Mr. Tanton's declaration, the Court concludes that Plaintiffs have made sufficient allegations to establish Plaintiff ATI's

---

[6] Intervenor-Defendants also argue that the Court should not consider the Tanton Declaration because it is not based on personal knowledge.  (ECF No. 60, at 8-10.)  The Court agrees with Intervenor-Defendants as to ATP's standing:  Mr. Tanton only identifies himself as the Executive Director of ATI, and does not allege that he has any direct involvement with ATP. Therefore, Mr. Tanton does not appear to have personal knowledge regarding the details of ATP's membership.  However, as to ATI's standing, the Court cannot presume at this early of the proceedings that Mr. Tanton – ATI's Executive Director – does not have personal knowledge regarding the injuries allegedly suffered by ATI's electric utility members and coal-producing member.  Indeed, Intervenor-Defendants have come forward with no evidence or facts controverting Mr. Tanton's contention that the averments in his affidavit are based on personal knowledge.  During discovery of this action, Intervenor-Defendants will presumably be able to conduct the necessary inquiry to determine whether Mr. Tanton has personal knowledge of the matters to which he attests.  *See Lujan*, 504 U.S. at 561. However, at this early stage of the proceedings, the Court will accept Mr. Tanton's averments as to ATI as properly based on personal knowledge.

standing at this early stage of the proceedings.  *See Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.").  First, Plaintiffs have sufficiently alleged that ATI's electric utility members and coal-producing member "would otherwise have standing to sue in their own right . . . ." *Friends of the Earth*, 528 U.S. at 181 (stating the first requirement for associational standing).  Specifically, the operative Complaint alleges that "members of [ATI] . . . are being harmed and will continue to be harmed by the discriminatory effects of [the RES]."  (ECF No. 12, ¶ 126.)  This allegation is clarified in Mr. Tanton's declaration, in which he avers that ATI's electric utility members "are forced to acquire renewable energy due to the Colorado renewable energy mandate at a cost higher than if they were not required to obtain renewable energy and instead rely exclusively on coat and natural gas for generation."  (ECF No. 53-1, ¶ 5.)[7]  Mr. Tanton also avers that ATI's coal-producing member "is shut out of that

---

[7] Intervenor-Defendants argue that ATI cannot rely on anonymous electric utilities to show standing, and that ATI should be forced to disclose the identity of those utilities.  (ECF No. 60, at 3-5.)  The Court disagrees for purposes of Intervenor-Defendants' Motion to Dismiss.  The majority of case law cited by Intervenor-Defendants in support of this argument are cases involving the anonymity of *named Plaintiffs*, not the anonymity of *members of Plaintiff associations*.  The only other case relied on by Intervenor-Defendants – *American Chemistry Counsel v. Department of Transportation*, 468 F.3d 810 (D.C. Cir. 2006) – is unhelpful to their argument.  *American Chemistry Counsel* does not explicitly state that a member of an association cannot remain anonymous even if there are sufficiently detailed attestations of injury made on behalf of that anonymous member.  More importantly, however, *American Chemistry Council* involved a petition for review brought pursuant to 49 U.S.C. § 5127(a) and 20114(c), and 28 U.S.C. § 2342(7).  Therefore, there was only one stage of the federal action, in which the federal court was sitting in an appellate capacity, to decide the issue of standing.  Here, however, this Court is faced with Motions to Dismiss at the pleading stage of a civil action originating in this Court.  *See Lujan*, 504 U.S. at 561.

part of the interstate market for coal that would have existed but for the Colorado RES and thereby suffers injury from losses in sales." (*Id.* ¶ 10.)

These allegations establish all of the required elements for constitutional standing of these members of ATI:  injury-in-fact, causation, and redressability.  *Lujan*, 504 U.S. at 560-61.  The economic injuries alleged are actual, concrete, and particularized.  *See Mountain States Legal Found. v. Costle*, 630 F.2d 754, 764 (10th Cir. 1980) ("'Injury in fact' means concrete and certain harm.  It may be the out-of-pocket costs to a business resulting from obedience to a new governmental rule . . . .").  Further, the injuries are allegedly directly caused by the enactment and implementation of the RES, and a ruling that the RES is unconstitutional would invalidate the RES and redress the alleged ongoing injuries.  *See Colo. Manufactured Hous. Ass'n v. Bd. of Cnty. Comm'rs of the Cnty. of Pueblo, Colo*, 946 F. Supp. 1539, 1545 (D. Colo. 1996).

Second, paragraph 3 of the operative Complaint includes sufficient allegations that "the interests at stake [in this action] are germane to [ATI's] purpose . . . ."  *Friends of the Earth*, 528 U.S. at 181 (stating the second requirement for associational standing).  (*See* ECF No. 12, ¶ 3.)  And third, neither the claims asserted in this action nor the relief

---

The Court agrees, however, that if Plaintiffs continue to base their standing on the injuries suffered by the electric utility members of ATI, Plaintiffs will need to disclose the identities of those members during discovery, so that Defendants and Intervenor-Defendants can take discovery to test the allegations of injury allegedly suffered by those electric utility members.  Intervenor-Defendants also raise questions regarding, among other things, whether the electric utility members and coal-producing member of ATI are actually engaged in interstate commerce.  These are issues that are more properly addressed in a motion for summary judgment, after Intervenor-Defendants have had a chance to explore those issues during discovery.

requested[8] requires the participation of individual members in the lawsuit.  *Friends of the Earth*, 528 U.S. at 181 (stating the third requirement for associational standing).

### c.    Prudential Standing of ATI

In terms of prudential standing, the parties' briefing again focuses disproportionately on Plaintiff Lueck, and not on whether Plaintiffs ATI and ATP have prudential standing.  The Court concludes, at this early stage of the proceedings, that ATI has prudential standing based on the alleged injuries suffered by its electric utility members and coal-producing member.  *See Lujan*, 504 U.S. at 561.  First, in terms of the prudential standing limitation that prevents a Plaintiff from raising another person's legal rights, the electric utility members and coal-producing member on whose behalf ATI brings suit have themselves suffered the injuries alleged.[9]  The fact that ATI brings the suit on their behalf does not violate this prudential standing limitation.  *See United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996).[10]

---

[8] The operative Complaint is vague as to whether the 42 U.S.C. § 1983 claim for damages is being pursued by Plaintiffs ATI and ATP on behalf of their members.  It appears from the case law that a claim for such damages in this context would not be viable.  *See, e.g.*, *Warth*, 422 U.S. at 515-16.  However, given the ambiguity in the Complaint and, more importantly, the fact that neither Defendants nor Intervenor-Defendants have moved to dismiss the 42 U.S.C. § 1983 claim for damages on this basis, the Court will defer resolution of this issue until the summary judgment stage.

[9] Notably, Defendants' Motion to Dismiss argues that Plaintiff Lueck cannot raise the legal rights of those entities actually impacted by the RES, *specifically identifying producers of non-renewable energy and electric utilities* as those entities directly impacted by the RES.  (*See* ECF No. 28, at 15-17.)

[10] In *United Food and Commercial Workers*, the Supreme Court clarified that associational standing is an exception to the general prudential standing rule that a person cannot sue to enforce another person's legal rights:

Second, the prudential standing limitation that prevents consideration of abstract, generalized grievances is inapplicable here.  The economic harms alleged by ATI on behalf of the electric utility members and coal-producing member are concrete and particularized, not abstract and generalized.  *See Warth*, 422 U.S. at 499 ("[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure *by all or a large class of citizens*, that harm alone normally does not warrant exercise of jurisdiction.") (emphasis added).

And finally, the interests of electric utilities who are required to obtain a portion of their electricity from renewable sources through an interstate electric grid,[11] and of a coal-producing company who lost business due to the RES's requirements on electric utilities, are both arguably within the "zone of interests" intended to be protected by the dormant Commerce Clause.  *See Dennis v. Higgins*, 498 U.S. 439, 449 (1991) (stating that the dormant Commerce Clause "confer[s] a 'right' to engage in interstate trade free

---

[A]lthough we noted in *Flast* that "a litigant will ordinarily not be permitted to assert the rights of absent third parties," 392 U.S. at 99 n. 20, 88 S.Ct., at 1952, n. 20; *see also Valley Forge, supra*, at 474, 102 S.Ct., at 759-760, we recognized in *Allen v. Wright*, 468 U.S., at 751, 104 S.Ct., at 3324, that "the general prohibition on a litigant's raising another person's legal rights" is a "judicially self-imposed limi[t] on the exercise of federal jurisdiction," not a constitutional mandate. Indeed, the entire doctrine of "representational standing," of which the notion of "associational standing" is only one strand, rests on the premise that in certain circumstances, particular relationships . . . are sufficient to rebut the background presumption . . . that litigants may not assert the rights of absent third parties.

517 U.S. at 557.  *See also Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 958 F.2d 1018, 1021 (10th Cir. 1992).

[11] At this early stage of the proceedings, the Court accepts as true the claim that the electric utility members "generate energy that flows through an interstate transmission system" and that they therefore both "engage in interstate commerce."  (ECF No. 53-1, ¶ 4; *see also* ECF No. 12, ¶¶ 23-59.)  *See Lujan*, 504 U.S. at 561.

from restrictive state legislation," because it "was intended to benefit those who . . . are engaged in interstate commerce"); *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012) (stating that the "zone of interests" prudential standing test "is not meant to be especially demanding" and that "we have always conspicuously included the word 'arguably' in the test to indicate that the benefit of the doubt goes to the plaintiff") (internal quotations omitted).

In accordance with the foregoing, the Court concludes that Plaintiffs have asserted sufficiently detailed allegations to establish Plaintiff ATI's constitutional and prudential standing at this early stage of the proceedings.

### 3.    Standing of Plaintiffs Other than ATI

Because the Court holds that Plaintiff ATI has standing to pursue this action, the Court need not, and declines to, address whether Plaintiffs ATP and Rod Lueck have standing. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977) ("[Because] we have at least one individual plaintiff who has demonstrated standing . . ., we need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit."); *Sec'y of the Interior v. California*, 464 U.S. 312, 319 n.3 (1984) ("Since the State of California clearly does have standing, we need not address the standing of the other respondents, whose position here is identical to the State's."); *cf. Horne v. Flores*, 129 S. Ct. 2579, 2592 (2009) ("Because the superintendent clearly has standing to challenge the lower courts' decisions, we need not consider whether the Legislators also have standing to do so.").[12]

---

[12] *See also U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 729 (1990); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986); *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981).

**B.      Eleventh Amendment and 42 U.S.C. § 1983**

Defendants also move to dismiss certain claims in this action based on Eleventh Amendment immunity, and also move to dismiss the 42 U.S.C. § 1983 claim as to certain Defendants for failure to state a claim.  (ECF No. 28, at 18-24.)  As previously stated, Plaintiffs' operative Complaint brings 12 claims for injunctive or declaratory relief based on alleged violations of the Commerce Clause, and also brings a generally-worded claim for damages under 42 U.S.C. § 1983.  (ECF No. 12, ¶¶ 156-190.)  The operative Complaint names as Defendants the State of Colorado and six individual state officials, with the individual Defendants named "in [their] official capacit[ies] and in [their] individual capacit[ies] with respect to the claim for damages under 42 U.S.C. § 1983."  (*Id.* ¶¶ 6-12.)

In their Motion to Dismiss, Defendants point out that it is not entirely clear which claims are brought against which Defendants in what capacities, so "[i]n an abundance of caution" have moved to dismiss certain claims that are either barred by the Eleventh Amendment or are not viable under 42 U.S.C. § 1983.  (ECF No. 28, at 4, 18-24.)

**1.      State of Colorado**

Defendants argue that the Eleventh Amendment of the United States Constitution bars all of Plaintiffs' claims against the State of Colorado.  (ECF No. 28, at 19-20.)  They are correct.  *See* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States . . . .").  Plaintiffs concede that the State of Colorado is properly dismissed from this action on that ground.  (ECF No. 39, at 15 ("The Plaintiffs concede that the State of Colorado is immune from suit under the Eleventh Amendment,

and are therefore prepared to relinquish the State of Colorado as a named Defendant."). Accordingly, all claims against the State of Colorado are hereby dismissed with prejudice.

**2.      42 U.S.C. § 1983 Claim for Damages Against the Individual Defendants in Their Official Capacities**

Plaintiffs' Operative Complaint is at least somewhat ambiguous regarding whether they bring their 42 U.S.C. § 1983 claim for damages against the individual Defendants only in their individual capacities, or in both their individual and official capacities.  (*See* ECF No. 12, ¶¶ 7-12.)  Given this ambiguity, Defendants argue that the section 1983 claim should be dismissed to the extent it is being pursued against Defendants in their official capacities.  (ECF No. 28, at 23-24.)  Defendants are correct on this point as well. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.").  In their Response, Plaintiffs impliedly concede the point by only arguing (1) that they may pursue their section 1983 damages claim against Defendants in their *individual* capacities, and (2) that they may pursue their claims for *injunctive and declaratory relief* against Defendants in their official capacities.  (ECF No. 39, at 12-15.)  Accordingly, Plaintiffs will only be allowed to pursue their 42 U.S.C. § 1983 claim for damages against the individual Defendants in their individual capacities.  Plaintiffs' section 1983 claim is dismissed to the extent it is being pursued against the individual Defendants in their official capacities.

**3.      42 U.S.C. § 1983 Claim for Damages Against Defendant Epel**

Defendants also argue that the section 1983 claim for damages against

Defendant Epel should be dismissed.  (ECF No. 28, at 21-22.)  Defendant Epel was substituted as a Defendant in this action after he replaced former defendant Ron Binz as the Chair of the PUC.  (*See* ECF No. 15, 17.)  Plaintiffs state in their Response that they "are prepared to relinquish Defendant Epel in his individual capacity for damages as he was substituted into this case after commencement of suit."  (ECF No. 39, at 15.)  Therefore, the Court will dismiss the section 1983 claim for damages against Defendant Epel.

### 4.    Claims Against Defendants Hickenlooper and Kelley

### a.    Official Capacity Claims Seeking Prospective Relief

Defendants also move to dismiss Plaintiffs' claims for injunctive and declaratory relief against Defendant John Hickenlooper in his official capacity as the Governor of Colorado, and against Defendant Barbara J. Kelley in her official capacity as the Executive Director of the Colorado Department of Regulatory Agencies.  (ECF No. 28, at 20-21.)  Defendants argue that these claims are barred by the Eleventh Amendment (*see id.*), while Plaintiffs argue that they are not (ECF No. 39, at 13-15).  As explained directly below, the resolution of this dispute turns on whether Defendants Hickenlooper and Kelley have sufficient involvement in enforcing the RES.[13]

The Eleventh Amendment generally bars actions brought in federal court against state officers sued in their official capacities.  *See Harris v. Owens*, 264 F.3d 1282, 1289 (10th Cir. 2001).  One exception to this rule – the *Ex parte Young* exception – provides

---

[13] Defendants' briefing makes clear their concession that the individual Defendants who are Commissioners on the PUC have direct responsibility for enforcing the RES, and therefore the claims for prospective relief brought against them are not barred by the Eleventh Amendment.

that "[t]he Eleventh Amendment does not bar a suit against state officials in their official capacities if it seeks prospective relief for the officials' ongoing violation of federal law." *Id.*; *see also Ex parte Young*, 209 U.S. 123 (1908).  However, *Ex parte Young* itself indicates that this exception only applies if the officer has "some connection with the enforcement of the act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party."  209 U.S. at 157.  The Tenth Circuit has repeatedly stated that the governing test in this Circuit is whether the official has a "particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."  *Chamber of Commerce of the U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010); *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 (10th Cir. 2007) (same).

Defendants argue that the PUC has sole responsibility for enforcing the RES, that Defendants Hickenlooper and Kelley have no such authority, and therefore that the claims for injunctive and declaratory relief against Hickenlooper and Kelley are barred by the Eleventh Amendment.  In response, Plaintiffs argue that Governor Hickenlooper has a general duty to enforce the laws of Colorado (which includes the RES), that he has involvement with other renewable energy laws, and that he publicly supports the RES. (ECF No. 39, at 14.)  As to Defendant Kelley, Plaintiffs similarly argue that she has a sufficient connection with enforcement of the RES because she heads the agency that oversees the PUC.  (*Id.*)[14]

---

[14] Plaintiffs' Operative Complaint contains similar allegations.  As to Defendant Hickenlooper, Plaintiffs' Operative Complaint alleges that "[t]he agencies that report to him include the Department of Regulatory Agencies, which includes the [PUC] which implements the RES.  He has publicly supported the RES and expansion of its scope and discriminatory

After a careful review of the operative pleadings, the Court concludes that Plaintiffs have advanced insufficient allegations that Defendants Hickenlooper and Kelley have a particular duty to enforce the RES.  As a consequence, the claims against those Defendants for injunctive and declaratory relief are properly dismissed.  The RES and other governing laws indicate that it is the PUC (*i.e.*, the PUC Commissioners), and no one else, who is responsible for enforcing the RES.  In enacting the RES, the Colorado General Assembly specifically authorized the PUC (only) to enforce the RES.  Indeed, the statute starts with the following language:

> Each provider of retail electric service in the state of Colorado . . . shall be considered a qualifying retail utility.  Each qualifying retail utility . . . shall be subject to the rules established under this article by the [PUC]. . . . [T]he [PUC] shall revise or clarify existing rules to establish the following . . . .

Colo. Rev. Stat. § 40-2-124(1); *see also id.* §§ 40-2-124(1)(c)(II)(C); 40-2-124(1)(e)(I.5); 40-2-124(1)(g)(I)(A)-(C).[15]  The corresponding regulations regarding the RES also specifically discuss only the PUC's regulatory authority under the Act.  *See, e.g.*, 4 Code Colo. Regs. 723-3, § 3650(a) ("Rules 3650 through 3668 shall apply to all investor owned jurisdictional electric utilities in the state of Colorado that are subject to the [PUC's] regulatory authority."); *see also id.* §§ 3653(a), 3653(b), 3655(c), 3655(f), 3656(a), 3657(a).[16]

---

effect." (ECF No. 12, ¶ 7.)  As for Defendant Kelley's involvement, the operative Complaint similarly alleges:  "The agencies that report to her include the [PUC] which implements the RES. She has publicly supported the RES and expansion of its scope and discriminatory effect."  (*Id.* ¶ 8.)

[15] *See* Fed. R. Evid. 201(b); *Grynberg*, 390 F.3d at 1278 n.1.

[16] Furthermore, Article XXV of the Colorado Constitution, entitled "Public Utilities," specifically provides that

Plaintiffs' arguments for why Defendants Hickenlooper and Kelley are sufficiently involved in enforcing the RES are unpersuasive.  First, the allegation that Hickenlooper and Kelley have "publicly supported" the RES does not establish the necessary actual involvement in *enforcing* the RES.  *See Edmondson*, 594 F.3d at 760 (identifying the controlling test as whether the official has a "particular duty to enforce the statute in question *and* a demonstrated willingness to exercise that duty") (emphasis added). Second, as to Defendant Hickenlooper, the fact that, as Governor of the State, he has a general duty to enforce the laws of Colorado also does not show sufficient actual involvement in enforcing the RES, particularly because those with direct responsibility for enforcing the RES are named as Defendants here.  *See Bishop v. Oklahoma*, 333 F. App'x 361, 365 (10th Cir. 2009) ("[T]he Oklahoma officials' generalized duty to enforce state law, alone, is insufficient to subject them to a suit challenging a constitutional amendment they have no specific duty to enforce.").  Similarly, as for Defendant Kelley, the mere fact that she heads the Colorado Department of Regulatory Agencies does not show that she has a particular duty to enforce the RES.[17]  Finally, the fact that Governor

---

> *all power* to regulate the facilities, service and rates and charges therefor . . . of every corporation, individual, or association of individuals . . . operating within the State of Colorado . . . as a public utility . . . is hereby vested in such agency of the State of Colorado as the General Assembly shall by law designate.  Until such time as the General Assembly may otherwise designate, said authority shall be vested in the [PUC] . . . .

(emphasis added).

[17] Notably, the Department of Regulatory Agencies' website indicates that it has eleven different divisions (one of which is the PUC) and 40 different boards, commissions, and advisory committees.  *See* http://www.dora.state.co.us/dora_pages/AboutUs/ CollectiveResource.html (last visited July 9, 2012); http://www.dora.state.co.us/dora_pages/ AgenciesBoards/Boards.htm (last visited July 9, 2012); *see also* Fed. R. Evid. 201(b); *Grynberg*, 390 F.3d at 1278 n.1.  This

Hickenlooper has been actively involved in promoting renewable energy initiatives generally does not establish that he has had any actual involvement in enforcing the RES specifically, and Plaintiffs have failed to properly allege as much.

As a consequence, Plaintiffs' claims for injunctive and declaratory relief against Defendants Hickenlooper and Kelley are dismissed.

### b.    Individual Capacity Claims Seeking Damages Under 42 U.S.C. § 1983

Defendants similarly argue that the section 1983 damages claim against Hickenlooper and Kelley should be dismissed because they have no personal involvement in the alleged constitutional deprivations, and there is no supervisory liability under section 1983.  Once again, Defendants are correct.  For the reasons discussed above, Plaintiffs have not plead or otherwise shown how Defendants Hickenlooper and Kelley have had any personal involvement in the enforcement of the RES.  *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").  Plaintiffs also have not plead or otherwise shown how Defendants Hickenlooper and Kelley could properly be found liable based on *respondeat superior*.  *See Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) ("§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which subjects, or causes to be subjected

---

further calls into question that Defendant Kelley has active involvement in the PUC's decision-making process.

that plaintiff to the deprivation of any rights secured by the Constitution.") (internal quotations and ellipses omitted).  For the same reasons that the Court has held that the claims against Hickenlooper and Kelley seeking injunctive and declaratory relief are properly dismissed, Plaintiffs' 42 U.S.C. § 1983 claim seeking damages against Hickenlooper and Kelley also fails.

## IV.  CONCLUSION

In accordance with the foregoing, the Court hereby ORDERS as follows:

(1)     Defendants' Motion to Dismiss (ECF No. 28) is GRANTED IN PART and DENIED IN PART;

(2)     Intervenor-Defendants' Motion to Dismiss (ECF No. 37) is DENIED;

(3)     Plaintiffs have made sufficient allegations regarding Plaintiff ATI's standing such that the action is not properly dismissed at this early stage of the proceedings on the ground of lack of standing;

(4)     All of Plaintiffs' claims brought against the State of Colorado are DISMISSED WITH PREJUDICE.  The State of Colorado is no longer a defendant in this action.

(5)     All of Plaintiffs' claims against Defendants John Hickenlooper and Barbara J. Kelley, in both their official and individual capacities, are DISMISSED WITHOUT PREJUDICE;

(6)     To the extent that Plaintiffs, in their First Amended Complaint, sought to bring a 42 U.S.C. § 1983 claim for damages against Defendants Joshua Epel, James Tarpey, Matt Baker, and Doug Dean in their official capacities, such claims are DISMISSED WITH PREJUDICE;

(7)     Plaintiffs' 42 U.S.C. § 1983 claim for damages against Defendant Joshua Epel in his individual capacity is hereby DISMISSED WITH PREJUDICE;

(8)     The following claims from Plaintiffs' First Amended Complaint (ECF No. 12) will proceed past the pleading stage in this action:

   (a)     Plaintiffs' First through Twelfth Claims for Relief (seeking injunctive and declaratory relief based on alleged violations of the Commerce Clause) against Defendants Joshua Epel, James Tarpey, Matt Baker, and Doug Dean in their official capacities, and

   (b)     Plaintiffs' Thirteenth Claim for Relief (seeking damages under 42 U.S.C. § 1983) against Defendants James Tarpey, Matt Baker, and Doug Dean in their individual capacities.

Dated this 17th day of July, 2012.

BY THE COURT:

_____
William J. Martínez
United States District Judge